**LEE BAKER**

v.

**HORN, et al.**

**Civ.A. No. 96–CV–0037.**

United States District Court,
E.D. Pennsylvania.

May 31, 2002.

Billy H. Nolas, Stuart B. Lev, Defender Association of Philadelphia, Philadelphia, PA, for plaintiff.

Peter J. Gardner, Thomas W. Dolgenos, Donna G. Zucker, David Curtis Glebe, District Attorney's Office, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

On June 25, 1999, Petitioner Lee Baker ("Baker"), a state prisoner convicted of

first degree murder and sentenced to death, petitioned for a writ of *habeas corpus* under 28 U.S.C. § 2254. Respondents include the Commissioner of the Pennsylvania Department of Corrections, and the Superintendents of the State Correctional Institutions at Graterford and Rockview ("the Commonwealth"). On August 31, 2001, the Commonwealth filed a motion to dismiss Baker's petition as untimely under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), or in the alternative, a motion to dismiss all claims in the petition that were procedurally defaulted in state court and, therefore, unreviewable in federal court. For the reasons set forth below, I will deny the motion.

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | PROCEDURAL HISTORY | 595 |
| II. | DOES AEDPA APPLY AT ALL? | 603 |
| III. | AEDPA'S STATUTE OF LIMITATIONS | 606 |
| IV. | RELATION BACK | 609 |
| V. | STATUTORY TOLLING | 610 |
| | A. "Properly Filed" | 610 |
| | B. "Pending" | 619 |
| VI. | EQUITABLE TOLLING | 620 |
| VII. | EXHAUSTION | 625 |
| VIII. | PROCEDURAL DEFAULT | 630 |
| | A. "Unmistakable Terms" | 632 |
| | B. "Firmly Established and Regularly Followed" | 635 |

## I. PROCEDURAL HISTORY

The following is a chronology of the procedural history relevant to the Commonwealth's motion to dismiss [1]:

| | |
|---|---|
| *October 4, 1984* | *Lee Baker was convicted of first degree murder before the Honorable Alfred F. Sabo in the Court of Common Pleas of Philadelphia County.* |
| *January 30, 1985* | *Judge Sabo sentenced Baker to death.* |
| *February 11, 1985* | *Baker filed a motion with Judge Sabo to modify his sentence. sentence.* |
| *February 14, 1985* | *Judge Sabo denied the motion to modify Baker's sentence without a hearing. As he was automatically entitled, Baker appealed to the Pennsylvania Supreme Court.* |

---

**1.** All state court proceedings are italicized; federal court proceedings are in ordinary Times New Roman font.

| | |
|---|---|
| *February 3, 1986* | *The Court of Common Pleas of Philadelphia County appointed new counsel to represent Baker.* |
| *July 17, 1986* | *Baker filed a petition with the Pennsylvania Supreme Court to remand the case to the trial court to address claims of ineffective assistance of trial counsel.* |
| *November 10, 1986* | *The Pennsylvania Supreme Court granted Baker's petition to remand. The case was remanded to Judge Sabo.* |
| *April 10, 1987* | *Baker filed a "petition pursuant to the Post–Conviction Hearing Act" ("PCHA petition of 4/10/87") raising claims of ineffective assistance of counsel.[2]* |
| *November 18, 1987* | *After a hearing, Judge Sabo dismissed Baker's PCHA petition of 4/10/87. Baker again appealed the original judgment of sentence of death imposed on 1/30/85, and also appealed Judge Sabo's dismissal of the petition of 4/10/87.* |
| *June 17, 1992* | *The Pennsylvania Supreme Court affirmed both the judgment of sentence of death and Judge Sabo's dismissal of the petition* |

2. Baker's PCHA petition of 4/10/87 included the following claims of ineffective assistance of trial counsel:

(1) failure to timely move for an identification line-up of all purported witnesses;

(2) failure to request appointment of an investigator or to conduct an investigation himself;

(3) failure to call witnesses who previously stated that Baker was not observed at the location of the crime;

(4) failure to cross-examine identification witness Crosby;

(5) failure to cross-examine identification witness Dolan;

(6) failure to explain to Baker that unless he testified in his own defense, his statement given to the police following his arrest would be deemed to have been voluntary;

(7) failure to argue in support of motion to suppress that one detective testified that he was not present at the interrogation while a second detective testified that the first detective was present;

(8) failure to move to sever Baker's trial from trial of co-defendants;

(9) failure to list as a reason for a new trial objections to the prosecutor's closing argument;

(10) failure to object to the trial court's charge regarding:

(A) the fact that Baker did not testify;

(B) "reasonable doubt";

(C) the verdict report;

(11) failure to request trial court to instruct jury regarding tentative identifications of photographs by Dolan, and to request cautionary instruction regarding Crosby's failure to identify Baker by photograph;

(12) failure to advise Baker of presence of Stanford Saunders on the jury panel;

(13) failure to question prospective jurors concerning their racial bias, and failure to object to prosecutor's striking of qualified black jurors;

(14) advising Baker not to testify in own defense because prosecutor could use Baker's juvenile record to impeach;

(15) failure to investigate and present facts and witnesses during the penalty phase of trial;

(16) failure of counsel to move for a mistrial when co-defendants "pointed" at Baker while their statements were read to jury, and when Detective Ansel looked at Baker and co-defendants while reading redacted statements;

(17) failure to cite testimony of Marcus Angro, the alleged victim of a shooting in a separate incident as a ground for mistrial; and

(18) failure to have Baker included in a hearing regarding the recantation of identification testimony of Calvin Budden, thereby forfeiting Baker's right to confrontation.

of 4/10/87. See Commonwealth v. Baker, 531 Pa. 541, 614 A.2d 663 (Pa.1992).

| | |
|---|---|
| *Date Unknown* | *Baker petitioned for reargument.* |
| *March 2, 1993* | *The Pennsylvania Supreme Court denied Baker's motion for reargument.* |
| *July 30, 1993* | *Baker filed a pro-se petition for post-conviction relief under the Pennsylvania "Post Conviction Relief Act" ("PCRA")* [3] *("PCRA petition of 7/30/93"). The petition of 7/30/93 was assigned to the Honorable Joseph Papalini in the Court of Common Pleas of Philadelphia County.* |
| *August 23, 1993* | *Judge Papalini dismissed the petition of 7/30/93 without the appointment of counsel and without conducting a hearing. Baker appealed.* |
| *December 13, 1993* | *Judge Papalini filed an opinion in support of his August 23, 1993 dismissal of Baker's PCRA petition of 7/30/93.* |
| *Fall 1994* | *The Pennsylvania Supreme Court appointed counsel to represent Baker in the appeal of Judge Papalini's dismissal of Baker's PCRA petition of 7/30/93.* |
| *May 8, 1995* | *The Supreme Court of Pennsylvania affirmed Judge Papalini's dismissal of Baker's PCRA petition of 7/30/93 stating that "the issue raised by Appellant [Baker] was previously litigated on direct appeal to this court, and, thus, Appellant is ineligible for relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9543(3), 9544(a)(2)." Commonwealth v. Baker, 540 Pa. 131, 656 A.2d 116, 116 (Pa.1995). Baker petitioned the United States Supreme Court for a writ of certiorari.* |
| October 30, 1995 | The U.S. Supreme Court denied certiorari. |
| January 3, 1996 | Baker filed a motion for appointment of counsel and to proceed in forma pauperis in federal court. The matter was assigned to me for adjudication. |
| January 4, 1996 | I granted Baker's IFP motion and appointed Billy H. Nolas as counsel. |
| *January 15, 1997* | *Baker filed a petition in state court entitled "Petition for Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and for Post–Conviction Relief under the Post Conviction Relief Act" ("PCRA petition of 1/15/97"). The petition was assigned to Judge Sabo.* [4] |

**3.** The PCRA is the successor statute to Pennsylvania's Post–Conviction Hearing Act ("PCHA").

**4.** Baker's PCRA petition of 1/15/97 contained the following claims for relief:

(1) Erroneous dismissal of Baker's pro se petition for collateral relief (petition of 7/30/93), without the appointment of counsel and an evidentiary hearing, as a second and subsequent petition denied Baker his state and federal rights to due process, state constitutional right to counsel, and all prior counsel were ineffective for failing to object to the treatment of Baker's remand on direct appeal as a PCRA proceeding;

(2) Baker was denied his rights to effective assistance of counsel where trial and appel-

late counsel failed to conduct a constitutionally adequate investigation and, consequently, failed to discover exculpatory testimony;

(3) Baker was denied due process by trial court's erroneous instruction on accomplice liability permitting jury to find Baker guilty of first degree murder as an accomplice even if it found that he did not possess the requisite mens rea, and all prior counsel were ineffective for failing to raise issue at any prior stage of the proceedings;

(4) Baker was denied his state and federal right not to testify, to due process, and against cruel and unusual punishment when prosecutor engaged in numerous improprieties in closing argument and where trial court took no steps to cure the error;

(5) Baker's right to due process and counsel were violated by the admission of in court identifications of two witnesses, one of whom initially identified another person, then later became sure of his tentative identification of Baker at a suggestive counseless confrontation, and the other initially failed to identify Baker, but later identified him at a suggestive preliminary hearing after the prosecutor had assured defense counsel that the witness would not be asked to make an identification;

(6) Baker was denied his rights to effective assistance of counsel where trial court failed to cross-examine the identification witnesses with their prior inconsistent statements, and where appellate counsel failed to raise this issue on either direct or collateral review;

(7) trial counsel was ineffective for failing to request a cautionary charge requiring jury to treat Dolan's identification with caution, as required under Pennsylvania law;

(8) Baker was denied his rights under the Fifth and Fourteenth Amendments and corresponding provisions of Pennsylvania Constitution where trial court instructed jury that it must draw inference of guilt from fact that Baker did not testify, and Baker was denied his rights to effective assistance of counsel where defense counsel failed to object to unconstitutional instruction, and where appellate counsel failed to raise the issue on direct appeal;

(9) Baker was denied his state and federal constitutional rights to due process where the trial court failed to instruct the jury that the Commonwealth had the burden of proving each element beyond a reasonable doubt;

(10) Baker was denied his constitutional right to a jury trial and to due process where the trial court erroneously removed the offense of robbery from the jury's consideration by instructing it that the Commonwealth had sufficiently proved that there had been an attempted robbery;

(11) Baker was denied his constitutional rights to confrontation and due process where the prosecutor introduced evidence that an alleged coconspirator, who was never charged with the crime, refused to speak with the police when interviewed, and Baker was denied the effective assistance of counsel where neither trial nor appellate counsel objected to this testimony or raised the issue;

(12) Baker's capital sentence is unconstitutional because it was based on false and misleading information concerning Baker's prior juvenile record which led the jury to find the aggravating circumstance of "significant history of felony convictions involving the use of threat of violence to the person";

(13) Pennsylvania courts' arbitrary and inconsistent interpretation of "a significant history of felony convictions involving the use or threat if violence to the person" to include ambiguous juvenile adjudications of delinquency for burglary violated due process guarantee of the Fourteenth Amendment, the Eighth Amendment, and corresponding provisions of the Pennsylvania Constitution;

(14) Baker's death sentence violated his Eighth and Fourteenth Amendment rights and the corresponding provisions of the Pennsylvania Constitution where there was insufficient evidence to support jury's finding of the aggravating circumstance of "grave risk to others" and where trial court's instruction on that aggravating circumstance failed to include the limiting constructions on that aggravating circumstance imposed by the Pennsylvania Supreme Court, rendering that aggravating circumstance unconstitutionally vague and overbroad;

(15) Baker was denied his constitutional rights to effective assistance of counsel at penalty phase where trial counsel failed to investigate and prepare for that hearing, and failed to uncover and present relevant mitigating evidence where appellate and post conviction counsel failed to properly investigate and litigate this claim on direct or collateral appeal;

(16) Baker is entitled to relief from his death sentence because the trial court's instructions, which told the jury that its sentencing decision would be reviewed by the Pennsylvania Supreme Court, unconstitution-

| | |
|---|---|
| *Prior to March 31, 1997* | *Baker's counsel, Billy Nolas, submitted to Judge Sabo a proposed order without an accompanying motion which stated in part:* |
| | *"[T]he PCRA petition herein [petition of 1/15/97], as supplemented, is dismissed without prejudice due to on-going litigation in federal court."* [5] |
| *March 31, 1997* | *Judge Sabo did not sign Nolas' proposed order but issues his own order dismissing Baker's petition of 1/15/97 "as premature due to on-going litigation in federal court." The order failed to specify whether the dismissal was with or without prejudice. The order notified Baker that he had 30 days to appeal the order.* |
| *April 9, 1997* | *Baker filed a motion for rehearing of the petition of 1/15/97 based on newly discovered evidence which Baker contended disclosed a Batson claim.* |
| April 23, 1997 | Baker filed a petition for writ of *habeas corpus* in federal court under 28 U.S.C. § 2254 ("federal petition of 4/23/97"). |
| *April 25, 1997* | *Baker appealed to the Pennsylvania Supreme Court Judge Sabo's March 31, 1997 dismissal of Baker's PCRA petition of 1/15/97.* |
| *May 7, 1997* | *Judge Sabo issued an opinion in support of his March 31, 1997 order dismissing Baker's PCRA petition of 1/15/97. It stated in part:* |

ally diminished the jury's sense of responsibility for its death sentencing decision;

(17) Jury instructions and verdict slip violated the Eighth Amendment, due process clause of the Fourteenth Amendment and the corresponding provisions of the Pennsylvania Constitution because they created the substantial probability that the jury would think that unless it unanimously found a mitigating circumstance, no individual juror could consider that mitigating circumstance in determining the sentence;

(18) Baker was deprived of the individualized sentencing determination to which he was entitled under the Eighth and Fourteenth Amendments as a result of the fact that his penalty phase proceedings were conducted jointly with those of his co-defendants;

(19) Trial court's failure to charge jury that a sentence of life imprisonment would result in Baker's life-long incarceration without possibility of parole, violated Baker's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments and the corresponding provisions of the Pennsylvania Constitution;

(20) Counsel was ineffective for failing to raise the issues presented in this petition at trial and in post-trial motions and for failing to litigate these issues either on direct or collateral appeal to the Pennsylvania Supreme Court;

(21) Each of the above bases for relief that were not objected to at trial and/or raised on direct appeal are reviewable on the merits under the relaxed waiver rule in capital cases;

(22) Baker is entitled to relief from his conviction and sentence because of the cumulative effect of the errors described in this petition; and

(23) Baker is entitled to an evidentiary hearing.

5. According to Nolas, he submitted the proposed order because Judge Sabo had dismissed a PCRA petition of another of Nolas' clients, Otis Peterkin, on the ground that Peterkin was simultaneously litigating his claims in federal court. Believing Judge Sabo would similarly dismiss Baker's PCRA petition, Nolas hoped to expedite the process.

*"The Petition was initially dismissed at the request of defense counsel as being premature due to on-going litigation in federal court ... Even if this action were not barred by federal litigation ... the action would still not meet the requisites for relief under the Post–Conviction Relief Act. The defendant himself acknowledges that there have been multiple filings under the Post Conviction Relief Act in this case. Guided by governing criteria set forth in Commonwealth v. Lawson, 519 Pa. 504, 549 A.2d 107 (1988) for repetitive filings, the Court finds that the Defendant has failed to set forth a strong prima facie case that a miscarriage of justice occurred."*

*Judge Sabo also denied Baker's April 9, 1997 motion for rehearing based on the Batson claim.*

| | |
|---|---|
| *May 14, 1997* | *Baker filed a petition for reconsideration of Judge Sabo's May 7, 1997 opinion. Baker argued that he had not requested dismissal of his petition and that Judge Sabo had misunderstood the intention of Baker's counsel in submitting the proposed order of dismissal.* |
| *June 5, 1997* | *Baker appealed Judge Sabo's May 7, 1997 opinion to the Pennsylvania Supreme Court.* |
| *August 28, 1997* | *In response to Baker's June 5, 1997 appeal, Judge Sabo issued another opinion in which he stated that he was "without understanding as to how a party who has already filed an appeal in an action can file a totally separate appeal from a denial of reconsideration involving the very same action."* |
| | *Judge Sabo also noted that Baker's May 14, 1997 petition for reconsideration was untimely because it was filed more than 30 days after the dismissal order of 3/31/97 was issued.* |
| October 17, 1997 | The Commonwealth filed a "motion for adjudication of issues of exhaustion and procedural default" in federal court. |
| | According to the Commonwealth, Baker's federal habeas petition was a "mixed petition," containing claims that had not been exhausted in state court. The Commonwealth argued that the unexhausted claims were procedurally defaulted because they were time-barred under state law. As a result, the Commonwealth contended, the unexhausted claims were unreviewable in federal court. |
| | In the alternative, the Commonwealth argued that if Baker's unexhausted claims were not procedurally defaulted in state court, his federal petition must be dismissed for failure to exhaust state remedies. |
| November 10, 1997 | Baker responded to the Commonwealth's motion for adjudication of issues of exhaustion and procedural default. Baker conceded that at least one of the claims in his federal petition was unexhausted in state court. However, Baker argued that any unexhausted claims were not procedurally defaulted in state court. Baker presented me with three options for how to proceed: (1) I could dismiss the petition without prejudice for failure to exhaust; (2) the Commonwealth could waive exhaustion, and permit review of the petition as filed; or (3) I could |

hold the federal case in abeyance while Baker exhausted his claims in state court.

November 18, 1997 The Commonwealth informed Baker's counsel by letter that it would not waive the exhaustion requirement for any claim in Baker's federal petition of 4/23/97.

December 22, 1997 I issued an order in which I(1) found that none of the unexhausted claims in Baker's federal petition of 4/23/97 were procedurally defaulted in state court, and (2) dismissed Baker's petition without prejudice for failure to exhaust state remedies.

*January 21, 1998* *While Baker's appeal of Judge Sabo's dismissal of the PCRA petition of 1/15/97 was pending before the Pennsylvania Supreme Court, Baker moved the Pennsylvania Supreme Court to compel the Commonwealth to file a complete record, to remand for proceedings in the lower court, and/or for an extension of time in which to file his brief.*

*January 29, 1998* *In response, the Commonwealth filed with the Pennsylvania Supreme Court (1) an answer "to [Baker's] moot and frivolous motion to compel," and (2) a "motion for summary disposition of appeal from time-barred third PCRA petition."*

*February 17, 1998* *Baker filed an answer to the Commonwealth's motion for summary disposition.*

*February 20, 1998* *The Pennsylvania Supreme Court issued an order (1) denying Baker's request to compel the Commonwealth or the clerk of the lower court to file a complete record; (2) denying Baker's request to remand; and (3) granting Baker's request for an extension of time to file his brief.*

July 31, 1998 In federal court, Baker filed a Rule 60(b) motion [6] for relief from the December 22, 1997 dismissal of his federal petition of 4/23/97. Baker argued that the dismissal could have the effect of precluding him from filing an amended habeas corpus petition after he had exhausted his state remedies. According to Baker, his federal statute of limitations could expire before his claims were exhausted in state court. Therefore, Baker asked that (1) I vacate the order of 12/22/97 dismissing his mixed petition without prejudice, and (2) I hold his case in abeyance pending the outcome of the state court disposition of his PCRA petition of 1/15/97.

November 16, 1998 I issued an order clarifying the December 22, 1997 order dismissing Baker's federal petition of 4/23/97 without prejudice:

"This Court's order of December 22, 1997 [dismissing Baker's petition without prejudice] is clarified to reflect that Petition-

---

**6.** Federal Rule of Civil Procedure 60(b) provides, in part:

 **b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final

judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment.

 Fed.R.Civ.P. 60(b).

er's writ of Habeas Corpus was dismissed without prejudice to Petitioner's right to file an amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) upon exhaustion of his state remedies.

This order is effective *nunc pro tunc* to the time of this Court's December 22, 1997 order."

| December 11, 1998 | Baker filed an application for certificate of appealability of my November 16, 1998 clarification order. On this same date, Baker filed a notice of appeal with the Third Circuit. |
| February 23, 1999 | I denied Baker's application for a certificate of appealability. |

*May 4, 1999* — *The Supreme Court of Pennsylvania in Commonwealth v. Baker, 556 Pa. 427, 728 A.2d 952 (Pa.1999), affirmed Judge Sabo's March 31, 1997 dismissal of Baker's PCRA petition of 1/15/97:*

*"The rules of criminal procedure allow a party to 'withdraw a petition for post-conviction collateral relief at any time.' Pa. R.Crim.P. 1505. We cannot, therefore, rule that it was error to grant [Baker's] request for a dismissal . . .*

*Appellant's brief also lists 23 other alleged errors. Due to Appellant's requested dismissal, none of these issues were litigated before the common pleas court and thus, no record has been developed for this Court to review. It is a general rule that, '[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Pa.R.A.P. 302. Therefore, we do not reach the merits of these issues."*

*Commonwealth v. Baker, 556 Pa. 427, 728 A.2d 952, 953 (Pa.1999).*

*The Pennsylvania Supreme Court's opinion was accompanied by an order which stated, in part:*

*"AND NOW, this 4*th *day of May, 1999, Appellee's [the Commonwealth's] Motion for Summary Disposition of Appeal from Time–Barred Third PCRA Petition is denied."*

*May 14, 1999* — *Baker filed an application for reargument before the Pennsylvania Supreme Court.*

June 25, 1999 — Baker filed a "notice to reopen habeas corpus case" and an amended federal petition for writ of *habeas corpus* ("federal petition of 6/25/99") in federal court.

August 18, 1999 — I issued an order that I would take no further action in the case because Baker's appeal of my November 16, 1998 order was still pending before the Third Circuit.

*February 1, 2000* — *The Pennsylvania Supreme Court denied Baker's application for reargument of its May 4, 1999 memorandum & order affirming the dismissal of Baker's PCRA petition of 1/15/97.*

July 18, 2000 — Baker filed a petition to withdraw his appeal from the Third Circuit.

| August 9, 2000 | The Third Circuit granted Baker's petition and terminated the appeal. |
| October 26, 2000 | I granted Baker's motion "to reopen habeas corpus case." |
| August 31, 2001 | The Commonwealth filed the "motion to dismiss [Baker's] amended [federal] petition as untimely, or, in the alternative, motion to dismiss all claims in the amended [federal] petition that are not reviewable under federal habeas law." |

The Commonwealth's August 31, 2001 motion to dismiss is before me now. It has not yet filed an answer to Baker's amended federal petition of 6/25/99. The parties agreed that because of the complicated procedural history surrounding the petition of 6/25/99, I should first address whether I am procedurally barred from considering Baker's petition on the merits. The Commonwealth argues (1) that Baker's amended federal habeas petition in its entirety is time-barred by the one-year statute of limitations period under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), or in the alternative, (2) that many of the claims in Baker's amended petition are unreviewable because they were procedurally defaulted in state court.

## II. DOES AEDPA APPLY AT ALL?

On April 24, 1996, Congress signed into law AEDPA which amended § 2244 and §§ 2253–2255 of chapter 153 of Title 28 of the United States Code, governing all habeas corpus proceedings in the federal courts. Pub.L. No. 104–132, 110 Stat. 1217–1221. Among AEDPA's most sweeping changes was the addition of a new subsection, 2244(d), which established a one-year limitations period for petitions filed by state prisoners under § 2254. *See* 28 U.S.C. 2244(d). In *Lindh v. Murphy,*

521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the Supreme Court ruled that AEDPA applies only to "cases filed" after the Act became effective on April 24, 1996. *See id.* at 336, 117 S.Ct. 2059. However, *Lindh* did not specify when a case is considered "filed" for purposes of AEDPA's applicability.

Because AEDPA only governs cases filed after April 24, 1996, I must decide when Baker's case was "filed" in order to determine whether AEDPA governs his amended federal petition of June 25, 1999 ("petition of 6/25/99").

Baker asserts that his habeas case was "filed" on January 3, 1996, the date he filed a motion for appointment of counsel in federal court. Therefore, he contends, because his case was filed before AEDPA, AEDPA does not govern his amended petition of 6/25/99. The Commonwealth responds that the proper measuring date for whether AEDPA applies is not the date that Baker filed a motion for appointment of counsel but the date that he filed the amended petition, June 25, 1999. Thus, it argues, because Baker filed the petition after the effective date of AEDPA, AEDPA applies.[7]

The Third Circuit has not specifically addressed whether a motion for appoint-

---

7. Although Baker's amended petition of 6/25/99 is the only petition before me now, theoretically, Baker's argument that the filing of a motion for appointment of counsel is the relevant measuring date for purposes of the applicability of AEDPA would apply equally to the question of whether his original petition of 4/23/97, also filed after the effective date of the Act, was governed by AEDPA.

ment of counsel commences a habeas case for purposes of the applicability of AEDPA, although other courts of appeals have. The Third Circuit, however, has adopted the general rule that the whether or not AEDPA applies is governed by the date that a petition is filed; any petition filed after the effective date of AEDPA is governed by AEDPA. *Banks v. Horn*, 271 F.3d 527, 532 (3d Cir.2001) (citing cases).[8]

Of those circuit courts that have considered the issue, all but one have rejected the notion that a motion for appointment of counsel commences a federal habeas case, holding instead that the relevant measuring date for whether or not AEDPA applies is the date that a petition was filed. As Judge Joyner recently noted in *Peterkin v. Horn*, 176 F.Supp.2d 342 (E.D.Pa.2001):

> With the exception of the Ninth Circuit, those Courts of Appeals which have had occasion to address the issue of whether the filing by a capital defendant of a Motion for Appointment of Counsel "commences" a habeas corpus proceeding within the meaning of 28 U.S.C. § 2251, *et seq.* have all uniformly held that the relevant date for determining the applicability of the AEDPA to habeas corpus petitions is the date that the actual habeas corpus petition is filed— not the date on which the motion for appointment of counsel is filed.

*Peterkin*, 176 F.Supp.2d at 356 (citing cases). *See Moore v. Gibson*, 195 F.3d 1152 (10th Cir.1999); *Williams v. Coyle*, 167 F.3d 1036, 1038 (6th Cir.1999); *Gosier v. Welborn*, 175 F.3d 504, 506 (7th Cir. 1999); *Nobles v. Johnson*, 127 F.3d 409 (5th Cir.1997).

As the Sixth Circuit explained in *Williams v. Coyle*, the statutory language of AEDPA supports this conclusion. Section 2254 of AEDPA, governing petitions of state prisoners, provides, in part, "[i]n a proceeding instituted by an application for a writ of habeas corpus ..." 28 U.S.C. § 2254(e)(1). Thus, the statute itself contemplates that the filing of a petition commences a case. Furthermore, the Sixth Circuit reasoned, a habeas petition is akin to a complaint, the filing of which commences a civil case. *See Williams v. Coyle*, 167 F.3d at 1038. *See also Moore*, 195 F.3d at 1162 (citing *Williams v. Coyle*, 167 F.3d at 1038).

As Baker points out, the Ninth Circuit took a contrary view in *Calderon v. The United States District Court for the Central District of California*, 163 F.3d 530 (9th Cir.1998), where it held that the filing of a motion for appointment of counsel, coupled with a motion to stay execution, commences a habeas case for purposes of the applicability of AEDPA. The Ninth Circuit based its decision on its interpretation of the Supreme Court's holding in *Hohn v. United States*, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998). In *Hohn*, the Supreme Court ruled that an application for a certificate of an appealability constituted a case and that it, therefore, had jurisdiction to hear the appeal of its denial. *Id.* at 246, 118 S.Ct. 1969. Based on *Hohn*, the Ninth Circuit reasoned in *Calderon* that a motion for appointment of counsel accompanied by a motion for leave to file a writ of habeas corpus constituted a "threshold action" like the application for a certificate of appealability. *See Calderon*, 163 F.3d at 540.

---

**8.** The Third Circuit has rejected the argument that an amended petition, filed after a prisoner's original petition was dismissed for failure to exhaust state remedies, should be treated as filed on the date of the original petition. *See Banks v. Horn*, 271 F.3d 527, 532 (3d Cir.2001).

Such filings, it held, create a "pending habeas case." *Id.*

◼ Like the Sixth, Seventh, and Tenth Circuits, however, I find the Ninth Circuit's reasoning in *Calderon* unpersuasive. As these courts of appeals explained, *Hohn* is undoubtedly distinguishable on the ground that it was limited to the question of whether an application for a certificate of appealability constitutes an appealable case, a question entirely different from when a case is deemed "filed" under AEDPA. *See Moore,* 195 F.3d at 1163 (*Hohn* is "limited to the determination that the rejection by the district court of the preliminary motion constitutes an appealable case"); *Williams v. Coyle,* 167 F.3d at 1040 ("*Hohn* and *Ex Parte Quirin* stand only for the proposition that the denial by the district court of a motion for the issuance of a COA . . . or . . . a motion for the appointment of counsel . . . would constitute an appealable case"). *See also Gosier,* 175 F.3d at 506 (the Ninth Circuit's reliance on *Hohn* in deciding whether a motion for appointment of counsel is a "case pending" under AEDPA is "inapt").

Baker further relies on the Supreme Court's decision in *McFarland v. Scott,* 516 U.S. 848, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995), to support his argument that the proper measuring date for purposes of AEDPA's applicability is the date he filed his motion for appointment of counsel. In *McFarland,* the Supreme Court was presented with the issue of whether a capital defendant can invoke the statutory right to counsel provided under federal habeas law, 21 U.S.C. § 848(b)(4)(B), before filing a habeas petition. *See id.* at 854–55, 116 S.Ct. 141. Section 848(b)(4)(B) provides capital defendants the right to seek appointment of counsel in "any post-conviction proceeding." 21 U.S.C. § 848(b)(4)(B). Looking to related provisions, the Court ruled that § 848(b)(4)(B)'s

right to appointment of counsel includes the right to counsel in preparing a habeas petition. *See id.* at 855, 116 S.Ct. 141. Therefore, it concluded that a motion for appointment of counsel commences a "post-conviction proceeding" for purposes of § 848(b)(4)(B). *See id.* at 856–57, 116 S.Ct. 141.

However, whether a capital defendant may invoke his statutory right to appointed counsel before filing his habeas petition is a question separate and apart from when a habeas case is filed for purposes of AEDPA's applicability. As the Sixth Circuit explained in *Williams v. Coyle*:

> The problem the Court addressed in *McFarland* was of an ongoing nature and had nothing to do with the effective date of any statutory provision. In the present case, on the other hand, the defendant faces additional procedural hurdles post-AEDPA, but there is no ongoing rationale for stretching the "pending" period to reach prior to the actual filing of the application as there was in *McFarland*.

*Williams,* 167 F.3d at 1039. Moreover, given the fact that *McFarland* was decided before AEDPA was enacted, Baker's reliance on it to establish that an appointment of counsel motion commences a post-conviction proceeding is further misplaced.

Accordingly, I conclude that Baker's habeas case was not "filed" for purposes of the applicability of AEDPA on the date that Baker filed his motion for appointment of counsel. This conclusion can be inferred from Third Circuit precedent, see *Banks,* 271 F.3d at 532, and is further supported by the reasoning of the majority of circuits that have directly addressed and rejected the argument that a motion for appointment of counsel commences a habeas case under AEDPA. A habeas case is not "filed" within the meaning of *Lindh* until a prisoner files a habeas petition.

Baker's original petition of 4/23/97 and his amended petition of 6/25/99 were both filed after the effective date of AEDPA. Therefore, whether I look to the filing date of the original or amended petition, AEDPA applies in this case.

### III. AEDPA'S STATUTE OF LIMITATIONS

Next, I must decide if Baker's federal action in habeas corpus is time-barred under AEDPA's statute of limitations.

AEDPA established a one-year limitations period for the filing of petitions by state prisoners, codified at 28 U.S.C. § 2244(d)(1):

> (d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998), the Third Circuit ruled that petitioners whose state convictions became final prior to the effective date of AEDPA, April 24, 1996, are entitled to a one year "grace period" to file a petition under § 2244(d)(1). Thus, such a petitioner had until April 23, 1997 to timely file a § 2254 federal habeas petition. *See id.*

■ AEDPA's one-year limitations period is subject to tolling. Section 2244(d)(2) of AEDPA provides for "statutory tolling" of § 2244(d)(1)'s one-year limitations period in the following circumstance:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).[9]

The Third Circuit has held that AEDPA's one-year limitations period is not a jurisdictional limitation but a statute of limitations. Therefore, it is also subject to equitable tolling. *See Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 618 (3d Cir.1998).

The parties do not dispute that the triggering date for measuring AEDPA's one-year limitations period in Baker's case is § 2244(d)(1)(A), the date on which Baker's judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." The Commonwealth contends that this date was in September 1992. Baker asserts that his

---

9. In *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), the Supreme Court ruled that an application for federal habeas review is not "an application for State post-conviction review or other collateral relief" within the meaning of § 2244(d)(2). A federal habeas petition, therefore, cannot toll a prisoner's limitation period under § 2244(d)(2). *See id.* at 181–82, 121 S.Ct. 2120.

judgment became final on May 31, 1993, the date on which the time period for filing a petition for writ of certiorari with the United States Supreme Court expired. Under either date, Baker's conviction became final within the meaning of § 2244(d)(1)(A) prior to the effective date of AEDPA; therefore, the one-year grace period applies to Baker. Accordingly, Baker's AEDPA limitations period began to run on April 24, 1996. Absent tolling, his limitations period expired on April 23, 1997.

Baker filed his original federal petition on April 23, 1997. Thus, it was timely filed under AEDPA. That petition, however, was dismissed without prejudice, and the only petition that is before me now is Baker's amended petition of 6/25/99. Yet because Baker argues that it is relevant to whether his amended petition is time-barred, I will briefly review the procedural history of this Court's dismissal of Baker's federal petition of 4/23/97.

On October 17, 1997, in lieu of filing an answer to Baker's petition of 4/23/97, the Commonwealth filed a motion "for adjudication of issues of exhaustion and procedural default" in which it asserted that the petition of 4/23/97 contained claims unexhausted in state court.[10] Therefore, the Commonwealth argued, unless I found that the claims were procedurally defaulted in state court, I must dismiss the petition of 4/23/97 for failure to exhaust.

In response to the Commonwealth's motion for adjudication of procedural issues, Baker conceded that at least one of the claims in his federal petition of 4/23/97 was not exhausted, but claimed that none of his potentially unexhausted claims were procedurally defaulted in state court. In light of this contention, Baker then presented several options for how to proceed in his federal case: (1) the petition could be dismissed without prejudice for failure to exhaust, (2) the Commonwealth could waive exhaustion of the unexhausted claims, or (3) if the Commonwealth declined to waive exhaustion, the case could be placed in suspense pending exhaustion of state remedies. Baker argued for one of the latter two options. The Commonwealth declined to waive exhaustion.

By Order and Explanation dated December 22, 1997, I ruled that Baker's federal petition of 6/25/99 was a "mixed" petition, containing exhausted claims and unexhausted claims, the latter of which I found were not procedurally defaulted under Pennsylvania law. Pursuant to the Supreme Court's decision in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), I dismissed the petition without prejudice for failure to exhaust state remedies. I also denied Baker's request to hold the case in abeyance while he fully litigated his unexhausted claims in state court, deciding that, absent exigent circumstances, the law of this circuit at that time required dismissal without prejudice of a "mixed" petition of exhausted and unexhausted claims. *See Christy v. Horn*, 115 F.3d 201, 207 (3d Cir.1997) (where execution is not imminent, court should not waive exhaustion requirement, and instead must dismiss the petition for failure to exhaust).

Baker subsequently filed a motion for reconsideration of the December 22, 1997 dismissal order, requesting that the order be vacated and that his case be placed in suspense pending the exhaustion of his state court remedies. Baker's motion for reconsideration was prompted by his con-

---

**10.** The Commonwealth noted that, at the time of its October 17, 1997 motion, Baker's PCRA petition filed on January 15, 1997 in the Philadelphia Court of Common Pleas was still pending in state court.

cern that any subsequent habeas petition that he filed could be found time-barred under AEDPA. Again, mindful of the Third Circuit's ruling in *Christy v. Horn*, I denied Baker's request to vacate the dismissal order and place his case in suspense. However, by order dated November 16, 1998, I clarified that the dismissal of Baker's petition of 4/23/97 was without prejudice to Baker's right to file an amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2), Relation Back.[11]

Baker then filed his amended petition on June 25, 1999. The Commonwealth claims that the petition of 6/25/99 is untimely under AEDPA. Baker disagrees.

The following is an outline of the contentions of the Commonwealth and Baker regarding whether Baker's amended petition of 6/25/99 is time-barred under AEDPA:

- The Commonwealth contends that the petition of 6/25/99 is time-barred because it was filed after Baker's AEDPA limitations period expired on April 23, 1997.

- Baker argues that his petition of 6/25/99 is not time-barred for the following three reasons:

 (1) *Relation Back*

 - According to Baker, the amended petition of 6/25/99 relates back to the date of his original petition of 4/23/97 which was timely filed under AEDPA.

 - The Commonwealth responds that Baker's amended petition of 6/25/99 cannot relate back to his original petition of 4/23/97 because relation back is improper under Third Circuit law.

 - Baker replies that this Court's November 16, 1998 order allowing for relation back distinguishes his case from those cases in which the Third Circuit ruled that relation back was improper as a matter of law.

 (2) *Statutory Tolling*

 - Baker asserts that his PCRA petition filed on January 15, 1997 ("PCRA petition of 1/15/97") statutorily tolled his AEDPA limitations period under § 2244(d)(2).

 - The Commonwealth responds that Baker's PCRA petition of 1/15/97 did not toll his AEDPA limitations period under § 2244(d)(2) because it was not "properly filed" for two reasons: (1) it was untimely under Pennsylvania law, and (2) Baker requested that the PCRA court dismiss the petition.

---

**11.** While I dismissed the petition of 4/23/97 pursuant to the Supreme Court's decision in *Rose v. Lundy* and the Third Circuit's instruction in *Christy v. Horn*, I note that Justice Stevens, joined by Justice Souter, recently advocated the practice, or at least the option, of holding a habeas petition in abeyance while a petitioner exhausted his claims in state court:

> [A]lthough the Court's pre-AEDPA decision in *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), prescribed the dismissal of federal habeas corpus petitions containing unexhausted claims, in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies. Indeed, there is every reason to do so when AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims, see 28 U.S.C. § 2254(b)(2) (1994 ed., Supp. V), and when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1–year limitations period.

*Duncan v. Walker*, 533 U.S. 167, 182–83, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring).

- Baker replies that his PCRA petition of 1/25/97 was "properly filed" under § 2244(d)(2) because (1) the Pennsylvania courts never ruled that it was untimely; (2) it is properly treated as his first PCRA petition and, therefore, was timely filed; and (3) Baker, specifically, Baker's counsel, did not request that the petition be dismissed.

(3) *Equitable Tolling*

- Baker asserts that his PCRA petition of 1/15/97 also equitably tolled his AEDPA limitations period.

- The Commonwealth contends that Baker has not met the requisite standard for equitable tolling because he engaged in "multi-level" "frivolous" and "problematic" litigation tactics, including the requested dismissal of the PCRA petition of 1/15/97, and should not be rewarded for such tactics.

- Baker responds that his PCRA petition of 1/15/97 is entitled to equitable tolling due to the uncertainty in Pennsylvania law regarding the "relaxed waiver rule" in capital cases. Baker also defends against the claim that he engaged in frivolous litigation.

I will consider each argument.

## IV. RELATION BACK

Baker asserts that his petition of 6/25/99 is timely under AEDPA because, pursuant to this Court's order of November 16, 1998, it relates back to the filing date of his original petition, April 23, 1997. The November 16, 1998 order clarifying the dismissal of Baker's original petition of 4/23/97 provided:

This Court's [dismissal] order of December 22, 1997 is clarified to reflect that Petitioner's writ of Habeas Corpus was

dismissed without prejudice to Petitioner's right to file an amended federal petition pursuant to Federal Rule of Civil Procedure 15(c)(2) [Relation Back] upon exhaustion of his state remedies.

(Order of Nov. 16, 1998, 96–CV–0037). Therefore, Baker argues, because the original petition of 4/23/97 was timely filed under AEDPA, under Rule 15(c) relation back, his amended petition of 6/25/99 is also timely filed. The Commonwealth contends that, despite the November 16, 1998 order, relation back in these circumstances is improper as a matter of law.

Federal Rule of Civil Procedure 15(c)(2) permits an amendment to a pleading to relate back to the date of the original pleading when "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2).

■ Under Third Circuit law, absent exigent circumstances, a court may not hold a habeas petition containing exhausted and unexhausted claims in abeyance pending the prisoner's exhaustion of state court remedies; the petition must be dismissed for failure to exhaust state remedies. *Christy v. Horn,* 115 F.3d at 206–07.

■ As the Commonwealth indicates, the Third Circuit has also made clear, albeit after this Court's order of November 16, 1998, that a habeas petition filed after a prior petition was dismissed without prejudice for failure to exhaust state remedies cannot, as a matter of law, relate back to the filing date of the prior petition. *See Banks,* 271 F.3d at 533; *Jones v. Morton,* 195 F.3d 153, 160–61 (3d Cir.1999). As the court explained in *Jones,* "[T]ypically, when a complaint (or habeas petition) is dismissed without prejudice, that complaint or petition is treated as if it never existed.'" *Jones,* 195 F.3d at 160 (quoting

*Hull v. Kyler*, 190 F.3d 88, 103–04 (3d Cir.1999)). A subsequent petition cannot relate back to a prior petition that was dismissed "because there [is] nothing for [the][ ] petition to relate back to." *Jones*, 195 F.3d at 160.

Baker's original petition was dismissed without prejudice on December 22, 1997, and his case was marked closed on December 23, 1997. Thus, as the Commonwealth asserts, under Third Circuit law, Baker cannot invoke relation back.

Baker attempts to distinguish his case from the cases in which the Third Circuit ruled that relation back is improper as a matter of law. According to Baker, this Court's order of November 16, 1998 allowing Baker to file an amended petition under Rule 15(c)(2) upon exhaustion of state remedies implicitly kept his federal case open, and thus this Court retained jurisdiction over the case while he returned to state court. This, he contends, distinguishes his case from the cases in which the Third Circuit rejected the relation back argument because in none of the latter cases did the respective courts keep the petitioner's case open after dismissing the petition. In support, Baker cites the Third Circuit in *Jones:* "Our order [dismissing Jones' prior petition] did not leave Jones's case open in federal court; rather, we dismissed the case without prejudice to Jones's ability to refile his claims after complying with the exhaustion requirement." *Jones*, 195 F.3d at 160.

Baker's argument fails. This court's order of November 16, 1998 did not "implicitly" keep Baker's case open while he returned to state court to litigate his unexhausted claims. Indeed, absent exigent circumstances, an order allowing a federal case to remain open pending a petitioner's exhaustion of state court remedies is improper under Third Circuit law. *See Christy v. Horn*, 115 F.3d at 206–07.

More importantly, while the order of November 16, 1998 may have allowed for relation back, it did not vacate or otherwise disturb the December 22, 1997 dismissal of Baker's original petition. As even the above-quoted statement from *Jones* makes clear, the crux of the Third Circuit's conclusion that an amended petition cannot relate back to a prior dismissed petition is the fact that the prior petition was dismissed. The dismissal of a petition, like the dismissal of a complaint, closes a case and wipes the slate clean. Once Baker's petition of 4/23/97 was dismissed, there was nothing for his amended petition "to relate back to." *Jones*, 195 F.3d at 160.

Accordingly, I conclude that Baker's amended federal petition does not relate back to the filing date of his original federal petition. In order to establish that his amended petition of 6/25/99 is not time-barred under AEDPA, Baker must rely on statutory or equitable tolling.

## V. STATUTORY TOLLING

Baker contends that his PCRA petition filed on January 15, 1997 in state court tolled his AEDPA limitations period under AEDPA, § 2244(d)(2). Section 2244(d)(2) provides that a "properly filed application for State post-conviction relief or other collateral review" tolls § 2244(d)(1)'s one-year limitations period for the time during which the properly filed application is "pending." 28 U.S.C. § 2244(d)(2). Thus, I must decide whether Baker's PCRA petition of 1/15/97 was "properly filed" and, if so, the period of time during which it was pending.

### A. "Properly Filed"

The standard for what constitutes a "properly filed" application is determined by federal law. In *Artuz v. Bennett*, 531

U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), the Supreme Court held that:

> [A]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

*Id.* at 8, 121 S.Ct. 361 (footnote omitted). The court distinguished between such "conditions to filing," to which a state application must adhere in order to be properly filed, and a state's "conditions to obtaining relief," with which an application need not comply for purposes of § 2244(d)(2): "[I]n common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Id.* at 9, 121 S.Ct. 361. *See also Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998) (" 'a properly filed application' is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing").

The Commonwealth contends that Baker's PCRA petition of 1/15/97 is not "properly filed" for purposes of § 2244(d)(2) in part on the ground that it was untimely under Pennsylvania law.[12]

In 1995, Pennsylvania's PCRA statute was amended to include a new time limit on the filing of PCRA petitions, codified in 42 Pa.Cons.Stat.Ann. § 9545(b):

> **(b) Time for filing petition.—**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.Cons.Stat.Ann. § 9545(b).[13]

The Pennsylvania legislature enacted a proviso to the 1995 PCRA amendments which states: "[A] petitioner whose judgment has become final on or before the effective date of this act shall be deemed to have filed a timely petition under [42 Pa.Cons.Stat.Ann. § 9545(b) ] if the petitioner's first petition is filed within one

---

**12.** In addition, the Commonwealth argues that the PCRA petition of 1/15/97 is not "properly filed" because Baker requested that it be dismissed. I will address this argument infra.

**13.** In *Lovasz,* the Third Circuit expressly identified § 9545(b) as an example of a procedural requirement to which a state petition must adhere:

> A Pennsylvania PCRA petitioner, for example, must file a motion with the clerk of court in which he was sentenced, Pa. R.Crim.P. 1501, generally within one year if the date the judgment becomes final, 42 Pa.Con.Stat.Ann. § 9545(b)(1).
>
> *Lovasz,* 134 F.3d at 148.

year of the effective date of this act." *See* Act of November 17, 1995, P.L. 1118, No. 32 (Spec.Sess. No. 1), § 3(1). The 1995 amendments to the PCRA became effective on January 16, 1996. The Pennsylvania Supreme Court has interpreted § 3(1)'s proviso to permit a prisoner whose judgment became final prior to January 16, 1996 to timely file a *first* PCRA petition on or before January 16, 1997. *See Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 641 (Pa.1998). *See also Commonwealth v. Thomas,* 718 A.2d 326, 329 (Pa.Super.Ct.1998). In other words, in order for a prisoner to timely file a PCRA petition under § 9545(b)'s "grace period," he must meet three requirements: (1) his judgment must have become final prior to January 16, 1996, (2) he must have filed a PCRA petition on or before January 16, 1997, and (3) this petition must have been the prisoner's first PCRA petition.

The Third Circuit has decided two cases after *Artuz* involving the question of whether an application for post-conviction relief was untimely under Pennsylvania law and, therefore, "[im]properly filed" within the meaning of § 2244(d)(2).

In *Fahy v. Horn,* 240 F.3d 239 (3d Cir. 2001), the Third Circuit addressed the issue of whether the Pennsylvania Supreme Court's ruling that Fahy's fourth PCRA petition was untimely under Pennsylvania law was binding on federal courts for purposes of whether or not the petition was "properly filed" under § 2244(d)(2). Fahy was convicted of first degree murder in Pennsylvania and sentenced to death in 1983. After failing to obtain post-conviction relief with his first three state petitions, Fahy filed a fourth PCRA petition on November 12, 1997. The PCRA court dismissed Fahy's petition, in part, on the ground that it was time-barred under Pennsylvania's PCRA statute. The Pennsylvania Supreme Court affirmed, finding

that the petition was untimely under § 9545(b) because it was filed more than a year after his judgment became final, it did not qualify for § 9545(b)'s grace period, and it did not satisfy the "interference by government officials" exception under § 9545(b)(1)(i). *See Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 218–220 (Pa.1999).

Stating that it "must defer to a state's highest court when it rules on an issue," the Third Circuit held that Fahy's PCRA petition was not "properly filed" for purposes of § 2244(d)(2): "Here the Pennsylvania Supreme Court has specifically ruled that Fahy's PCRA petition was not properly filed as a matter of state law ... Fahy's petition was therefore not statutorily tolled because his PCRA petition was not properly filed." *Fahy v. Horn,* 240 F.3d at 244.

Months later, in *Nara v. Frank,* 264 F.3d 310 (3d Cir.2001), the Third Circuit considered whether a prisoner's *nunc pro tunc* motion to withdraw his guilty plea was "properly filed" and, thus, tolled his AEDPA statute of limitations under § 2244(d)(2). *Id.* at 315–16. Nara pleaded guilty to first degree murder in 1984, and was sentenced to life imprisonment. In 1990, he filed what amounted to his second PCRA petition claiming that his guilty plea was invalid due to his mental incompetence. The Pennsylvania courts ultimately rejected this argument. *See id.* at 312. In December 1995, he filed a third PCRA petition raising the same claim. In September 1996, the PCRA court held a hearing on the petition where Nara conceded that he had previously litigated this claim. At that time, the PCRA court permitted Nara to withdraw his PCRA petition and to file a *nunc pro tunc* motion to withdraw his guilty plea. The court then issued a briefing schedule for the *nunc pro tunc* motion. After considering the briefs

of the parties on their merits, the PCRA court denied Nara's *nunc pro tunc* motion on the ground that Nara had been advised at his sentencing that he had 10 days to withdraw his guilty plea and had offered no "compelling reason why he waited twelve years to ask to withdraw his guilty plea." *Id.* at 313. The Superior Court affirmed, and the Pennsylvania Supreme Court denied Nara's petition for allowance of appeal. *See id.*

Noting that it takes a "flexible approach" to what constitutes a "properly filed" application for state post-conviction relief, the Third Circuit held that Nara's *nunc pro tunc* motion was "properly filed" for purposes of § 2244(d)(2). *Id.* at 315. The court rejected the Commonwealth's argument that a *nunc pro tunc* motion could never be "properly filed" for purposes of § 2244(d)(2) because, by its very nature, it is an untimely filing.[14] *See id.* at 315. Instead, in determining whether the motion was "properly filed," the court relied heavily on the way in which the Pennsylvania courts treated Nara's motion:

> The PCRA trial court accepted the motion, allowed the parties to brief the motion, and made a full consideration of the record before denying it. Indeed, Nara notes that his motion merely followed what the Superior Court suggested when the court disposed of Nara's second PCRA petition. Lastly, Nara contends that it is not uncommon for Pennsylvania courts to accept motions to

withdraw guilt pleas *nunc pro tunc*. Thus, we hold that Nara's motion to withdraw his guilty plea *nunc pro tunc* was a "properly filed application for State post-conviction or other collateral review" within the meaning of 2244(d)(2).

*Id.* at 316 (citations omitted).

Considered together, *Fahy* and *Nara* suggest two factors for determining whether an application for post-conviction relief complies with Pennsylvania's requirement for timely filing, and, therefore, whether the petition is "properly filed" under 2244(d)(2).[15] First, according to *Fahy*, a court should look to whether or not the Pennsylvania courts expressly ruled that the petition was untimely. Second, *Nara* suggests that a court should look to how the Pennsylvania courts treated the petition, i.e. whether they accepted the petition and considered it on the merits, or rejected it from the outset.

The Commonwealth argues that Baker's PCRA petition of 1/15/97 is not "properly filed" within the meaning of § 2244(d)(2) because (1) the petition did not comply with Pennsylvania's rule governing the time for filing a PCRA petition, § 9545(b), and (2) Baker requested that the PCRA court dismiss the petition.

Under § 9545(b), a PCRA petition must "be filed within one year of the date the judgment becomes final" unless one of

---

**14.** Black's Law Dictionary defines "nunc pro tunc" as: "Now for then. A phrase applied to acts to be done after the time when they should be done, with a retroactive effect." Black's Law Dictionary, Sixth Ed. (1990).

**15.** In his recent opinion in *Pace v. Vaughn*, 2002 WL 485689 (E.D.Pa. Mar. 29, 2002), Chief Judge Giles argued that the Third Circuit's decision in *Nara* should be considered controlling precedent over *Fahy*. As Chief Judge Giles explained, *Nara* (filed August 30,

2001) was decided after the Supreme Court's decision in *Artuz* (November 7, 2000) and cites *Artuz*. While *Fahy* was filed on February 9, 2001, also after *Artuz*, it did not refer to *Artuz*. *See Pace*, 2002 WL 485689, at *8. Thus, Chief Judge Giles contends that *Nara* should be controlling because it expressly incorporates the Supreme Court's latest pronouncement on the "properly filed" standard. *See id.*

enumerated exceptions applies [16], or the petitioner qualifies for the provision's one-year grace period for first petitions.

The parties do not agree on the specific date that Baker's judgment of sentence became final: the Commonwealth asserts it was in September 1992; Baker contends it was May 31, 1993. At the very latest, Baker's judgment became final on May 31, 1993. Accordingly, any PCRA petition that Baker filed after May 31, 1994 would be untimely under § 9545(b) unless the petition satisfied either the requirements for the one-year grace period or one of § 9545(b)'s three exceptions. Baker does not allege that any of § 9545(b)'s exceptions apply. Baker, however, does contend that the petition of 1/15/97 is timely under § 9545(b)'s one-year grace period.

In order for Baker's petition of 1/15/97 to be timely under § 9545(b)'s one-year grace period, Baker must meet the three requirements: (1) his judgment must have become final prior to January 16, 1996, the

effective date of the amended provision; (2) he must have filed the petition on or before January 16, 1997, and (3) the petition must have been his first PCRA petition. Baker clearly meets the first two requirements. First, whether measured by the date given by the Commonwealth or Baker, Baker's judgment was final prior to January 16, 1996. Second, he filed the PCRA petition on January 15, 1997. With respect to the third requirement, Baker argues here and argued in the PCRA petition itself that, although this petition is technically not his first PCRA petition, it should nevertheless be treated as such.[17] If the PCRA petition of 1/15/97 were treated as his first petition, it would then satisfy the third requirement and, thus, would be timely under § 9545(b)'s grace period. If Baker's petition of 1/15/97 were deemed a successive petition, as the Commonwealth contends it is, then the grace period would not apply to the petition. In that case, Baker's petition of 1/15/97 would be

**16.** Again, § 9545(b) provides that a PCRA petition must be filed within one year of the date that judgment becomes final unless the prisoner satisfies one of three exceptions: (1) failure to raise a claim was due to the interference of government officials; (2) the facts upon which a claim is predicated are newly discovered; or (3) the right asserted is a constitutional right recognized by the U.S. Supreme Court or Pennsylvania Supreme Court subsequent to the expiration of the prisoner's one-year filing period. 42 Pa.Con.Stat.Ann. § 9545(b)(1).

**17.** Baker does not dispute that he filed two prior petitions for state post-conviction relief but contends that "procedural irregularities and errors" in the treatment of these two petitions by the Pennsylvania courts denied him "his state guaranteed right to a counseled and meaningful first PCRA petition." Baker filed his first petition on April 10, 1987 ("PCHA petition of 4/10/87") and his second petition pro-se on July 30, 1993 ("PCRA petition of 7/30/93"). According to Baker, the PCHA petition of 4/10/87 should not have been treated as a post-conviction relief petition by the state courts because, at the time it

was filed, the Pennsylvania Supreme Court had not yet adjudicated Baker's direct appeal of the judgment of sentence. *See Commonwealth v. Leslie*, 757 A.2d 984, 985 (Pa.Super.Ct.2000) ("A PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights").

As a result of this error, Baker contends that the pro-se PCRA petition of 7/30/93 also should not be treated as a post-conviction relief petition because it was actually his first PCRA petition, and, therefore, under Pennsylvania law, he was entitled to counsel in preparing it. *See Commonwealth v. Albert*, 522 Pa. 331, 561 A.2d 736, 738 (1989) ("[I]n this Commonwealth one who is indigent is entitled to the appointment of counsel to assist with an initial collateral attack after judgment of sentence"). *See also Commonwealth v. Peterson*, 756 A.2d 687, 689 n. 3 (Pa.Super.Ct.2000) (treating second PCRA petition as prisoner's first PCRA petition where prior counsel failed to file an appellate brief, thus resulting in the dismissal of the initial petition).

untimely under § 9545(b) because it was not filed within a year of the date that Baker's judgment became final.

■ No Pennsylvania court ruled upon the timeliness of Baker's petition of 1/15/97 under § 9545(b). In light of this fact, and based on the Third Circuit's decisions in *Fahy* and *Nara*, I find that the PCRA petition of 1/15/97 was "properly filed" for purposes of § 2244(d)(2).

Baker filed the PCRA petition on January 15, 1997. The petition was assigned to Judge Sabo (who also presided over Baker's trial and sentencing). Sometime prior to March 31, 1997, Baker's counsel, Billy Nolas, submitted to Judge Sabo a proposed order to dismiss the petition of 1/15/97 without prejudice "due to on-going federal litigation." [18] According to Nolas, he submitted the proposed order because weeks before, Judge Sabo had dismissed the PCRA petition of another one of Nolas' clients, Otis Peterkin, "as premature due to on-going litigation in federal court." Peterkin and Baker's cases were in an identical procedural posture, leading Nolas to conclude that Judge Sabo would dismiss Baker's PCRA petition on this same ground. Thus, Nolas asserts, he submitted the proposed order to dismiss in order to expedite Judge Sabo's review of Baker's PCRA petition.

On March 31, 1997, Judge Sabo issued an order dismissing Baker's petition of 1/15/97 "as premature due to on-going litigation in federal court." This order was not the proposed order submitted by Nolas and did not specify whether the dismissal was with or without prejudice.

On April 9, 1997, Baker filed a motion for rehearing of the petition of 1/15/97 based on newly discovered evidence which Baker contended disclosed a *Batson* claim. On April 25, 1997, Baker timely appealed Judge Sabo's March 31, 1997 dismissal of the PCRA petition of 1/15/97 to the Pennsylvania Supreme Court, raising all claims for relief included in the petition.

On May 7, 1997, triggered by Baker's appeal of the March 31, 1997 dismissal order, Judge Sabo issued a memorandum opinion in support of his March 31, 1997 dismissal of Baker's PCRA petition stating that the "petition was initially dismissed at the request of defense counsel" and denying the motion for a hearing on the *Batson* claim. [19]

On May 14, 1997, Baker filed a petition for reconsideration of Judge Sabo's May 7, 1997 opinion. Baker asserted that he had not requested dismissal of the petition of 1/15/97 and that Judge Sabo had misunderstood the intention of Baker's counsel in submitting the proposed order of dismissal. Judge Sabo denied the motion for reconsideration.

On May 4, 1999, the Pennsylvania Supreme Court affirmed Judge Sabo's March 31, 1997 dismissal:

> "The rules of criminal procedure allow a party to 'withdraw a petition for post-conviction collateral relief at any time.' Pa.R.Crim.P. 1505. We cannot, therefore, rule that it was error to grant [Baker's] request for a dismissal. Nor can we rule that it was error to deny [Baker] a rehearing on his own request."

18. There is nothing in the record to indicate that this proposed order was accompanied by a motion to dismiss or a letter requesting dismissal.

19. Judge Sabo appears to have issued the May 7, 1997 memorandum pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), which directs the trial court to file a brief statement of the reasons for an order "if the reasons for the order do not already appear of record." Pa.R.App.P. 1925(a).

*Commonwealth v. Baker,* 556 Pa. 427, 728 A.2d 952, 953 (Pa.1999).

As a review of the procedural history makes clear, neither the PCRA court nor the Pennsylvania Supreme Court expressly ruled that Baker's petition of 1/15/97 was untimely under Pennsylvania law.[20] Absent an express ruling of untimeliness by a Pennsylvania court, *Fahy v. Horn* is not controlling. *See Fahy,* 240 F.3d at 244. *See also Pace v. Vaughn,* 2002 WL 485689, *7 (E.D.Pa. Mar. 29, 2002) (*Fahy* limited to the holding that "a federal court, in determining whether a state PCRA petition was 'properly filed,' must interpret state law as it does when sitting in a diversity case and must defer to a state's highest court when it rules on an issue").[21]

Furthermore, the procedural history surrounding Baker's appeal of Judge Sabo's March 31, 1997 dismissal indicates that the Pennsylvania Supreme Court implicitly rejected the Commonwealth's argument that Baker's PCRA petition of 1/15/97 was untimely. On January 29, 1998, while Judge Sabo's dismissal was on appeal to the Pennsylvania Supreme Court, the Commonwealth filed a motion for "summary disposition" in which it asserted that Baker's petition of 1/15/97 was time-barred under § 9545(b)(1). On February 17, 1998, Baker responded that his petition was not time-barred because, among other reasons, (1) it should be treated as his first PCRA petition, (2) dismissal as untimely would result in a miscarriage of justice, and (3) Baker's failure to "earlier raise" the claims in his third petition was a result of ineffective assistance of counsel. On February 20, 1998, the Pennsylvania Supreme Court issued an order that, in part, set a deadline for Baker's brief on the merits of the appeal; the court later set a briefing deadline for the Commonwealth as well. Pursuant to the court's briefing schedule, Baker fully briefed the claims for relief presented in the petition of 1/15/97, and the Common-

**20.** In the May 7, 1997 memorandum opinion, Judge Sabo offered an alternative ground for dismissing Baker's petition of 1/15/97: "Even if this action were not barred by federal litigation ... the action would still not meet the requisites for relief under the Post–Conviction Relief Act. The defendant himself acknowledges that there have been multiple filings under the Post Conviction Relief Act in this case. Guided by governing criteria set forth in *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988) for repetitive filings, the Court finds that the Defendant has failed to set forth a strong prima facie case that a miscarriage of justice occurred."

Judge Sabo's May 7, 1997 opinion postdates Baker's appeal of the March 31, 1997 dismissal order. Under Pennsylvania law, once an appeal is taken, the trial court may no longer proceed further in the matter. *See* Pa.R.App.P. 1701(a). Thus, Judge Sabo's supplemental justification for the dismissal has no legal effect. *See Pennsylvania Indus. Energy Coalition v. Pennsylvania Public Utility Com'n,* 653 A.2d 1336, 1346 (Pa.Cmwlth. 1995) (a trial court may not alter or otherwise substantively change its earlier decision with-

out expressly granting reconsideration of the prior decision). The Pennsylvania Supreme Court ignored Judge Sabo's supplemental justification for the dismissal of Baker's petition in its May 4, 1999 opinion affirming the dismissal.

In any event, whether or not the Baker's petition of 1/15/97 is a repetitive filing is irrelevant for purposes of statutory tolling under *Artuz* and *Lovasz. See Artuz,* 531 U.S. at 9, 121 S.Ct. 361; *Lovasz,* 134 F.3d at 148–49.

**21.** *Fahy* is distinguishable from Baker's case on further grounds. Like Baker, Fahy's judgment became final prior to the effective date of the 1995 PCRA amendments (January 16, 1996), making him eligible for § 9545(b)'s one-year grace period for first PCRA petitions. Fahy, however, did not file the PCRA petition at issue in *Fahy v. Horn* until November 1997. This petition, then, was filed almost ten months after the one-year grace period expired on January 16, 1997. Thus, unlike Baker, Fahy could not plausibly argue that his November 1997 petition was timely under Pennsylvania law.

wealth fully briefed its argument that the petition of 1/15/97 was untimely under § 9545(b). On May 4, 1999, the Pennsylvania Supreme Court issued a memorandum and order affirming Judge Sabo's March 31, 1997 dismissal and also denying the Commonwealth's motion for summary disposition.

According to the Third Circuit's reasoning in *Nara*, in determining whether Baker's petition of 1/15/97 was "properly filed," I look to the way in which the Pennsylvania courts treated the petition. *See Nara*, 264 F.3d at 316. The Commonwealth first argued to the Pennsylvania Supreme Court that Baker's petition of 1/15/97 was time-barred under § 9545(b) in its January 29, 1998 motion for summary disposition. The Pennsylvania Supreme Court did not immediately rule on the Commonwealth's timeliness argument. Instead, subsequent to the filing of this motion, the court established a briefing schedule, and accepted the briefs of both parties. The Commonwealth again argued in its brief that Baker's petition of 1/15/97 was time-barred under Pennsylvania law. The May 4, 1999 decision of the Pennsylvania Supreme Court affirming Judge Sabo's dismissal of the petition, however, made no mention of the Commonwealth's untimeliness argument. In fact, the court's accompanying order denied the Commonwealth's

January 28, 1998 motion for summary disposition. Under *Nara*, then, the fact that the Pennsylvania Supreme Court did not dismiss Baker's petition from the outset as untimely, but instead ordered and accepted briefing on the petition, further supports the conclusion that the petition was "properly filed" for purposes of § 2244(d)(2). *See Nara*, 264 F.3d at 316 (relying on the fact that the PCRA court ordered the parties to brief the prisoner's *nunc pro tunc* motion in finding that the motion was "properly filed" under § 2244(d)(2)).[22]

It is undisputed that the Pennsylvania Supreme Court never ruled that Baker's petition was untimely. As the Third Circuit has noted in the context of whether a habeas claim is procedurally defaulted under state law, it is axiomatic that "a federal court should not find a state prisoner's claims procedurally barred from federal habeas review unless state law 'clearly foreclose[s]' review of the claims." *Lovasz*, 134 F.3d at 148. The same rationale appears to apply equally here. Given the fact that Baker's petition of 1/15/97 could have been timely under 9545(b)'s one-year grace period if it were treated as his first petition, I decline to conclude what the Pennsylvania Supreme Court never did— that Baker's petition of 1/15/97 was untimely under Pennsylvania law.[23]

---

**22.** It is true that the Pennsylvania Supreme Court considered Baker's petition on its merits, whereas in *Nara*, the state court did. However, the reason that the Pennsylvania Supreme Court did not consider Baker's petition on its merits was not because it found that the petition was untimely but because it apparently believed that Baker had requested that it be dismissed.

**23.** Even if the petition of 1/15/97 was untimely under Pennsylvania law, it is unclear that I would be obligated to make this finding absent a ruling by the state courts to that effect. *See Smith v. Freeman*, 892 F.2d 331, 337 (3d Cir.1989) ("[W]e are not bound to enforce a

state procedural rule when the state itself has not done so, even if the procedural rule is theoretically applicable to our facts"). *Cf. Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir.2000) (adopting approach that analyzes whether a state application complied with the state's applicable filing requirements, independent of how the state courts treated the application).

Moreover, a question exists as to whether the proviso under § 9545(b) limiting the one-year grace period to first PCRA petitions is impermissibly retroactive under federal law. As the U.S. Supreme Court has recognized, the presumption against retroactive legisla-

The Commonwealth also argues that Baker's PCRA petition of 1/15/97 was not "properly filed" because Baker asked Judge Sabo to dismiss the petition. Baker's counsel, Nolas, strenuously objects to this characterization of what occurred. He does not dispute that at some point before Judge Sabo's March 31, 1997 dismissal of the petition of 1/15/97, he submitted to Judge Sabo a proposed order "to dismiss the petition without prejudice as premature due to ongoing federal litigation." Again, Nolas contends that he submitted the order only because Judge Sabo had dismissed the PCRA petition of another client of Nolas on this ground, and by submitting the proposed order to dismiss, he hoped to expedite Judge Sabo's review of Baker's petition. As mentioned before, however, there is nothing in the record to support the finding that Baker requested to withdraw the petition entirely.

Regardless of the intent of Baker's counsel in submitting the proposed order to dismiss to Judge Sabo, it is clear from the record that Baker fully pursued his claims in state court after Judge Sabo's March 31, 1997 dismissal of the petition of 1/15/97. Baker timely appealed Judge Sabo's dismissal. When Judge Sabo issued an opinion on May 7, 1997 in support of the dismissal stating that "the petition was dismissed at the request of defense counsel," Baker filed a motion for reconsideration of Judge Sabo's May 7, 1997 opinion. On appeal, Baker fully briefed the merits of the petition to the Pennsylvania Supreme Court, and he filed an application for reargument from the May 4, 1999 decision of the Pennsylvania Supreme Court affirming Judge Sabo's dismissal on the ground that Baker requested dismissal of the petition of 1/15/97. At no point did the Commonwealth argue to the Pennsylvania Supreme Court that the court should decline to review Baker's petition . of 1/15/97 on its merits because Baker had requested that the petition be dismissed.

Moreover, even if Baker's counsel did "request" dismissal of the petition, such a request does not mean that the petition itself was "[im]properly filed" within the meaning of § 2244(d)(2). As both the Supreme Court and the Third Circuit have made clear, whether an application for state post-conviction relief is "properly filed" is measured at the time of filing. *See Artuz*, 531 U.S. at 8, 121 S.Ct. 361 (listing as examples of "conditions to filing" the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee); *Lovasz*, 134 F.3d at 148 ("'a properly filed application' is one *submitted* according to the state's procedural requirements, such as the rules governing the time and place of filing") (emphasis added). Baker (Baker's counsel) did not request dismissal, if he did so at all, until some point after the petition of

---

tion is grounded in several federal constitutional provisions, including the Ex Post Facto Clause and the Due Process Clause. *See Landgraf v. USI Film Products*, 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

In *Burns v. Morton*, the Third Circuit joined several circuits in holding that the application of AEDPA's one-year statute of limitations "to bar the filing of a habeas petition before April 24, 1997, where the prisoner's conviction became final before April 24, 1996·[the effective date of AEDPA], would be impermissibly retroactive." *Burns*, 134 F.3d at 111. Thus, at

least in this circuit, a prisoner whose conviction became final before April 24, 1996 may file a habeas petition on or before April 23, 1997 regardless of whether the petition is the prisoner's first or is a successive petition. *See also Jones v. Morton*, 195 F.3d 153, 158 (3d Cir.1999).

*But see Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 221 (Pa.1999) (rejecting argument that § 9545(b) and its limited grace period are impermissibly retroactive). *Fahy*, of course, was decided by a state court, not a federal court.

1/15/97 was filed. Thus, under *Artuz* and *Lovasz*, Baker's request to dismiss should have no bearing on whether the petition was "properly filed" for purposes of § 2244(d)(2).

Thus, I find that this issue of whether or not defense counsel requested that Baker's petition of 1/15/97 be dismissed does not affect the determination of whether the petition was "properly filed." Because the Commonwealth has not argued that Baker failed to comply with any other procedural requirement in filing his PCRA petition of 1/15/97, I conclude that the petition was "properly filed" within the meaning of § 2244(d)(2).[24]

## B. "Pending"

■ Having determined that Baker's PCRA petition of 1/15/97 was "properly filed," I next must decide the length of time during which it was "pending" in order to calculate the tolling period under § 2244(d)(2).

Under § 2244(d)(2), AEDPA's limitation period is tolled during the period of time that a "properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The Third Circuit first addressed the time period during which a state petition is "pending" in *Swartz v. Meyers*, 204 F.3d 417 (3d Cir.2000). The court held that (1) AEDPA's statute of limitations is tolled "during the time between a court's ruling and the timely filing .of an appeal or request for allowance of appeal," and (2) "pending" includes the time for seeking an allowance of appeal to the Pennsylvania Supreme Court, whether or not an allowance of appeal is sought. *Id.* at 420–21. In *Stokes v. District Attorney of the County of Philadelphia*, 247 F.3d 539, 542–43 (3d Cir.2001), the Third Circuit ruled that the time in which a petitioner may seek certiorari in the United States Supreme Court does not toll AEDPA's limitations period under § 2244(d)(2) when the petitioner does not, in fact, file a petition for writ of certiorari.

The Third Circuit's last word on this issue came in *Nara v. Frank*. There, the court ruled that (1) the fourteen day period in which a Pennsylvania petitioner may file a motion for reconsideration of the Pennsylvania Supreme Court's denial of relief, and (2) the period during which the Pennsylvania Supreme Court considers such a motion, count for purposes of § 2244(d)(2) tolling *only if* the petitioner

---

**24.** Two judges in this district have ruled that an untimely PCRA petition may nevertheless be "properly filed" under § 2244(d)(2). *See Pace v. Vaughn*, 2002 WL 485689, at *6 (E.D.Pa. Mar. 29, 2002) (Giles, J.); *Rosado v. Vaughn*, 2001 WL 1667575, at *3 (E.D.Pa. Dec. 28, 2001) (Shapiro, J.); *Cooper v. Vaughn*, 2001 WL 1382493, at *3–4 (E.D.Pa. Nov. 6, 2001) (Shapiro, J.).

In so ruling, Chief Judge Giles and Judge Shapiro relied on the reasoning of the Ninth and Fifth Circuits which have held that when a state's statute of limitations for post-conviction motions is subject to exceptions that require a court to review the merits of the petition in order to determine if the exceptions apply, the limitations period is not a procedural filing requirement to which a peti-

tion must adhere in order to be "properly filed." *See Dictado v. Ducharme*, 244 F.3d 724, 727–28 (9th Cir.2001) (*Dictado II*); *Smith v. Ward*, 209 F.3d 383, 385 (5th Cir. 2000).

According to Chief Judge Giles and Judge Shapiro, the one-year limitations period under § 9545(b) of the PCRA is not a "condition to filing" but a "condition to obtaining relief" because, like the statutes at issue in *Dictado II* and *Smith*, it is subject to substantive exceptions. *See Pace*, 2002 WL 485689, at *6; *Rosado*, 2001 WL 1667575, at *3; *Cooper*, 2001 WL 1382493, at *3–4.

The approach taken in *Pace, Rosado,* and *Cooper* provides an alternative ground for concluding that Baker's petition of 1/15/97 was "properly filed."

actually files an application for reconsideration. *Nara*, 264 F.3d at 319 ("If Nara had indeed filed a motion for reconsideration, that motion would be 'pending' in the Pennsylvania Supreme Court until it was decided by that court").

Baker qualifies for AEDPA's one-year grace period because his conviction became final before AEDPA's effective date. *See Burns*, 134 F.3d at 111. Thus, Baker's AEDPA limitations period began to run on April 24, 1996, the effective date of the Act, and absent tolling, expired on April 23, 1997. Baker filed his PCRA petition on January 15, 1997. Because it was "properly filed," the PCRA petition tolled his AEDPA limitations period on that day, leaving him with approximately 100 days left in which to timely file a habeas petition under AEDPA's one-year grace period.

On May 4, 1999, the Pennsylvania Supreme Court affirmed Judge Sabo's dismissal of Baker's PCRA petition. Baker filed a timely application for reconsideration of the court's May 4, 1999 decision. On February 1, 2000, the Pennsylvania Supreme Court denied the application for reconsideration. Under *Nara*, Baker's PCRA petition was "pending" until February 1, 2000. *See Nara*, 264 F.3d at 319. Thus, Baker had 100 days from February 1, 2000 to file an amended federal petition to comply with AEDPA's statute of limitations. He filed his amended petition on June 25, 1999, before the Pennsylvania Supreme Court had even ruled on his motion for reconsideration and, therefore, within the time remaining under his AEDPA limitations period.[25] Accordingly, Bak-

er's federal petition of 6/25/99 was timely filed under AEDPA, §§ 2244(d)(1) and (2).

## VI. EQUITABLE TOLLING

■ Even if Baker's PCRA petition of 1/15/97 were untimely under § 9545(b)'s one year filing period and, thus, not "properly filed" within the meaning of § 2244(d)(2), Baker is not time-barred from seeking federal habeas relief under AEDPA because his PCRA petition of 1/15/97 equitably tolled his AEDPA limitations period.

In *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616 (3d Cir. 1998), the Third Circuit ruled that AEDPA's one-year limitations period is not a jurisdictional limitation but a statute of limitations and, therefore, is subject to equitable tolling. *See id.* at 618. Equitable tolling of AEDPA's limitations period is proper:

> only when the principle of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Fahy v. Horn*, 240 F.3d at 244. The Third Circuit, however, has recognized that "death is different:"

> Because the consequences are so grave and the applicable law is so confounding and unsettled, we must allow less than

---

**25.** Even if I were to find that Baker's PCRA petition of 1/15/97 was pending only until May 4, 1999, when the Pennsylvania Supreme Court ruled that Baker had requested dismissal of the petition of 1/15/97, on the theory that Baker was put on notice on that date that his own actions precluded state court review of

the petition, Baker's federal petition of 6/25/99 would still be timely. As of May 4, 1999, Baker had approximately 100 days remaining on his AEDPA limitations period. Baker filed the federal petition of 6/25/99 within 100 days of May 4, 1999.

"extraordinary" circumstances to trigger equitable tolling of the AEDPA's statute of limitations when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair.

*Id.* at 245.

In the capital habeas case, *Fahy v. Horn*, the Third Circuit applied the "less than extraordinary circumstances" standard in determining whether Fahy's fourth PCRA petition was entitled to equitable tolling. Although the court found that the petition was not "properly filed" for purposes of § 2244(d)(2) because the Pennsylvania Supreme Court ruled that the petition was untimely, it nevertheless considered whether equitable tolling was appropriate because of the uncertainty surrounding Pennsylvania law at the time that Fahy filed his PCRA petition in November 1997. The uncertainty centered on whether, at that time, the Pennsylvania courts would consider the petition on its merits despite its untimeliness. *See Fahy*, 240 F.3d at 244–45.

The possibility that a Pennsylvania court would consider the merits of Fahy's PCRA petition even though the petition was procedurally barred under Pennsylvania law stemmed from a practice followed by the Pennsylvania Supreme Court in capital cases known as "relaxed waiver." The Pennsylvania Supreme Court originally created the relaxed waiver rule to permit it to consider claims raised on *direct appeal* in a capital case that the defendant had otherwise waived. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (Pa.1998). The court, however, subsequently expanded the application of the relaxed waiver rule to post-conviction relief proceedings in capital cases, reaching the merits of claims in PCRA petitions

which were otherwise procedurally defective. *See e.g., Commonwealth v. Beasley*, 544 Pa. 554, 678 A.2d 773, 777 (Pa.1996).

But in 1998, the Pennsylvania Supreme Court held that it would no longer apply the relaxed waiver rule to PCRA petitions in capital cases. *Albrecht*, 720 A.2d at 700. In 1999, the Pennsylvania Supreme Court further clarified that the PCRA one-year limitations period is jurisdictional and, therefore, not waivable, even in capital cases. *See Commonwealth v. Banks* ("*Banks III*"), 556 Pa. 1, 726 A.2d 374, 376 (Pa.1999). Thus, with the decisions in *Albrecht* and *Banks III*, Pennsylvania law was clear as of 1999 that Pennsylvania courts have no jurisdiction whatsoever to consider an untimely PCRA petition, regardless of whether the petitioner was sentenced to death.

Fahy filed his fourth PCRA petition in November 1997, before the Pennsylvania Supreme Court rulings in *Albrecht* and *Banks III*. According to the Third Circuit, his attempt to litigate his PCRA petition in state court despite its untimeliness under Pennsylvania law was, therefore, "reasonable":

> The law at the time of Fahy's petition was inhibitively opaque. Fahy filed his fourth PCRA petition in November, 1997, months before the Pennsylvania Supreme Court announced that it would no longer observe the relaxed waiver rule in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). Further, the Pennsylvania Supreme Court did not clarify that the state PCRA statute was jurisdictional and not waivable until 1999 in *Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374 (1999). . . . If we could not predict how the Pennsylvania court would rule on this matter, then surely we should not demand such foresight

from the petitioner. Fahy's misjudgment, therefore, was reasonable.

*Fahy,* 240 F.3d at 245.

The Third Circuit also found that it was reasonable for Fahy to conclude that he had to file a fourth PCRA petition in state court to exhaust any new claims before filing a federal habeas petition raising those same claims, given the likelihood that a federal court would have dismissed such a petition for failure to exhaust. The court stated that:

> [I]t was also objectively reasonable for Fahy to believe that if he filed a § 2254 petition at the time he filed his fourth PCRA petition, the § 2254 petition would be dismissed as unexhausted. As we stated in [*Banks v. Horn,* 126 F.3d 206 (3d Cir.1997) (*"Banks I"*)], at the relevant time we could not, "with confidence," predict the Pennsylvania court's position regarding procedural bars on unexhausted claims. *Banks [I],* 126 F.3d at 214. In light of this uncertainty, the changes wrought by the AEDPA, and our strong opinions regarding exhaustion, it was reasonable for Fahy to believe that a fourth petition was necessary.

*Id.*

In recognition of the uncertainty that Fahy faced in trying to litigate his post-conviction claims in both state and federal court, the Third Circuit found that Fahy had "diligently and reasonably asserted his claims." *Id.* Thus, according to the Third Circuit:

> When state law is unclear regarding the operation of a procedural filing requirement, the petitioner files in state court because of his or her reasonable belief that a § 2254 petition would be dismissed as unexhausted, and the state petition is ultimately denied on these grounds, then it would be unfair not to toll the statute of limitations during the

pendency of that state petition up to the highest reviewing state court.

*Id.*

Eight months later, in *Banks v. Horn,* 271 F.3d 527 (3d Cir.2001) (*"Banks IV"*), the Third Circuit again held that equitable tolling was appropriate in a capital case whose procedural history was similar to that of Fahy. Banks filed a second PCRA petition in January 1997, which the Pennsylvania Supreme Court ruled did not comply with § 9545(b)'s one-year filing period. *See Banks III,* 726 A.2d at 375–76. Although the Third Circuit noted that Banks' PCRA petition was "technically ... too late under Pennsylvania law," the court again acknowledged that at the time Banks filed the petition in January 1997, it was unclear under Pennsylvania law whether § 9545(b)'s one-year filing requirement was a statute of limitations subject to equitable tolling and the relaxed waiver rule, or whether it operated as a jurisdictional limitation precluding any review of the petition on its merits. *Banks IV,* 271 F.3d at 534–35. Therefore, the Third Circuit agreed with the district court that barring Banks from federal habeas review because of the Pennsylvania Supreme Court's subsequent clarification of the law "would result in unfair forfeiture without notice." *Id.* at 534.

The application of equitable tolling in Baker's case is proper under the Third Circuit's decisions in *Fahy* and *Banks IV.* Baker was sentenced to death in Pennsylvania. When he filed his PCRA petition on January 15, 1997, the same month in which Banks filed his second PCRA petition, it was not clear whether Pennsylvania courts would apply the relaxed waiver rule to consider the merits of the petition despite the fact that it "technically" might have been untimely. Therefore, according to the Third Circuit, Baker exercised "reasonable diligence" in litigating his PCRA petition of 1/15/97 in state court, and equitable tolling is appropriate. *Fahy,* 240

F.3d at 245; *Banks IV*, 271 F.3d at 534.[26]

The Commonwealth argues that equitable tolling is improper here because Baker engaged in frivolous and time-consuming litigation tactics and, thus, did not diligently and reasonably assert his claims. It contends that to apply principles of equitable tolling in Baker's case would be to reward him for such tactics. According to the Commonwealth, examples of Baker's frivolous tactics include: (1) filing a facially time-barred PCRA petition (on 1/15/97); (2) requesting the PCRA court to dismiss this petition; (3) moving to reconsider the PCRA court's dismissal; (4) appealing the dismissal; and (5) filing a knowingly "mixed" habeas petition (on 4/23/97) on the last day of the AEDPA grace period.

I have already addressed the Commonwealth's first claim. At the time that Baker filed his PCRA petition of 1/15/97, it was unclear whether the Pennsylvania courts would apply the relaxed waiver rule to reach the merits of the petition despite its potential untimeliness. Moreover, as I discussed in relation to statutory tolling, if

treated as his first PCRA petition, the PCRA petition of 1/15/97 was timely filed under § 9545(b).

I have also addressed the Commonwealth's contentions regarding Baker's request that the PCRA court (Judge Sabo) dismiss the petition of 1/15/97. As I concluded earlier in relation to whether statutory tolling was appropriate in Baker's case, regardless of whether Baker did or did not request dismissal of the petition of 1/15/97, Baker's actions after Judge Sabo's March 31, 1997 dismissal indicate a clear desire to litigate the merits of the petition. Baker timely appealed the dismissal. When Judge Sabo issued the May 7, 1997 memorandum in support of the dismissal stating for the first time that the petition was dismissed at the request of defense counsel, Baker filed a motion for reconsideration of the memorandum. On appeal, Baker litigated the merits of the petition to the Pennsylvania Supreme Court. When the Pennsylvania Supreme Court affirmed Judge Sabo's dismissal of the petition of 1/15/97 on the ground that Baker

---

**26.** Baker in fact took an additional step to protect his right to federal habeas relief that Fahy and Banks did not take: he timely filed a federal petition on April 23, 1997. Because this petition contained claims from Baker's PCRA petition of 1/15/97 which, at that time, was still pending in state court, I dismissed the petition without prejudice for failure to exhaust state remedies. This dismissal for failure to exhaust is precisely what the Third Circuit in *Fahy* predicted could happen to a federal petition filed while a state petition was pending. *See Fahy*, 240 F.3d at 245. For this very reason, the court in *Fahy* found that it was reasonable for Fahy not to have filed a federal petition until after the Pennsylvania courts had completed review of the PCRA petition. *See id.* If Fahy was diligent in asserting his claims, then Baker, by actually filing the federal petition of 4/23/97, cannot be deemed any less diligent.

In addition, cognizant of the potential time bar problem if his federal petition of 4/23/97 were dismissed for failure to exhaust, Baker

further tried to protect his right to seek federal habeas review by requesting that I hold his petition of 4/23/97 in abeyance while he litigated his PCRA petition of 1/15/97 in state court. Baker made this request in response to the Commonwealth's October 17, 1997 motion for adjudication of procedural issues in which it argued that Baker's federal petition of 4/23/97 must be dismissed unless I found that its unexhausted claims were procedurally defaulted. Baker asked that instead of dismissing the petition of 4/23/97 for failure to exhaust, I place his case in suspense pending exhaustion of his state court remedies. He was concerned that if I dismissed the federal petition of 4/23/97, he could be prevented from seeking future federal habeas relief under AEDPA's statute of limitations. I denied Baker's request to hold his case in abeyance, finding that the law of this circuit at the time did not permit me to do so, and instead dismissed the petition of 4/23/97 without prejudice for failure to exhaust. *See supra* III.

had requested dismissal, Baker filed a timely application for reargument óf the court's decision. What the Commonwealth characterizes as frivolous litigation is actually unmistakable evidence that Baker never abandoned his efforts to exhaust his state court remedies.

Finally, the Commonwealth's claim that Baker's filing of his federal petition of 4/23/97 was somehow frivolous because it was a mixed petition is incorrect. The Commonwealth itself argued to this court in its October 17, 1997 motion for adjudication of procedural issues that any and all unexhausted claims in Baker's petition of 4/23/97 were procedurally defaulted in state court and, therefore, unreviewable in federal court. If I had agreed with the Commonwealth on this point, which I did not, I would not have dismissed the petition. If that had been the case, certainly then the Commonwealth could not argue that the petition was somehow frivolous.[27]

Moreover, at the time Baker filed the petition of 4/23/97, AEDPA was less than a year old, and federal courts had only begun to interpret the Act. Even today, federal courts are still grappling with how to interpret AEDPA. While the Commonwealth views Baker's petition of 4/23/97 as frivolous, it is also reasonable to view the petition of 4/23/97 as an attempt to safeguard and preserve Baker's right to seek federal habeas relief, given the possibility that future rulings in both state and federal court could adversely impact the availability of federal court review of his claims.

As the Third Circuit opined in *Fahy*, "Here the penalty is death, and courts must consider the ever-changing complexities of the relevant provisions that [a petitioner] attempted to navigate." *Fahy*, 240 F.3d at 245.

Baker "diligently and reasonably asserted his claims" and therefore is entitled to equitable tolling. *Fahy*, 240 F.3d at 245. Even if his PCRA petition of 1/15/97 was untimely under the PCRA, at the time that he filed it, he did not have notice that the PCRA's one-year limitations period was jurisdictional and, therefore, not waivable. Accordingly, "it would be unfair not to toll the statute of limitations during the pendency of that state petition up to the highest reviewing state court." *Fahy*, 240 F.3d at 245.

As I discussed in relation to statutory tolling under § 2244(d)(2), Baker's one-year AEDPA limitations period was initially tolled by the filing of the PCRA petition on January 15, 1997, leaving him with approximately 100 days to timely file a federal petition under AEDPA. His PCRA petition of 1/15/97 was pending until February 1, 2000, when the Pennsylvania Supreme Court denied his application for reargument, and tolled his AEDPA limitations period until that date. *See Nara*, 264 F.3d at 319. Baker filed his amended federal petition on June 25, 1999, while his application for reargument was still pending before the Pennsylvania Supreme Court, and before his AEDPA limitations period began to run again.[28] Thus,

---

**27.** Furthermore, even though the Commonwealth ultimately chose not to do so, the possibility existed at the time that Baker filed the petition of 4/23/97 that the Commonwealth would waive any exhaustion requirement, thereby erasing the need to send Baker back to state court to litigate the unexhausted claims.

**28.** Even if I were to find that Baker's PCRA petition of 1/15/97 was pending only until the Pennsylvania Supreme Court affirmed the PCRA court's dismissal of the petition on May 4, 1999, Baker's federal petition of 6/25/99 would still be timely. As of May 4, 1999, Baker had approximately 100 days remaining on his AEDPA limitations period. The petition of 6/25/99 was filed within 100 days of May 4, 1999.

on the basis of equitable tolling, Baker's amended federal petition of 6/25/99 was timely filed under AEDPA, § 2244(d)(1).

## VII. EXHAUSTION

■ Having determined that Baker's amended federal petition of 6/25/99 is not time-barred under AEDPA, I next must decide whether to reach the merits of the claims contained in the petition. Before a federal court may reach the merits of a claim in a timely filed § 2254 petition, each claim (1) must have been exhausted in state court, and (2) not procedurally defaulted. *See* 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ The purpose of the exhaustion requirement is to afford state courts, as a matter of comity, a full and fair opportunity to address federal claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To satisfy the exhaustion requirement, a petitioner must demonstrate that he "fairly presented" every claim in the federal petition to each level of the state courts, including the highest state court in which the petitioner was entitled to review. *See id.* at 845–48, 119 S.Ct. 1728; *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir.2000) ("The burden of establishing that such claims were fairly presented falls upon the petitioner"). To "fairly present" a claim, a petitioner must present the factual and legal substance of the claim to the state courts in a manner

that puts them on notice that a federal claim is being asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999). *See also Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir.1996) ("The petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are 'substantially equivalent' to those asserted in federal courts"). However, the state courts need not reach the merits of a claim for it to be properly exhausted; exhaustion requires only that a federal habeas petitioner afford the state courts the *opportunity* to consider a claim on its merits. *See Castille v. Peoples*, 489 U.S. 346, 350–51, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989).

Baker's federal petition of 6/25/99 contains twenty-five claims for relief. Twenty-two of these claims are contained almost verbatim in Baker's PCRA petition of 1/15/97.[29] Baker must have "fairly presented" the claims in the petition of 1/15/97 to the state courts, including the highest state court in which he was entitled to review, to have exhausted these claims in the 1997 PCRA proceedings. The Commonwealth argues that Baker failed to exhaust the claims in the petition of 1/15/97 because he failed to fairly present them to the state courts.

To decide if Baker has met his burden of demonstrating exhaustion with respect to

---

**29.** This conclusion is based on a comparison of Baker's federal petition of 6/25/99 to his PCRA petition of 1/15/97, an analysis that neither party presented in its submissions. Baker's PCRA petition of 1/15/97 in fact contains twenty-one claims that raise constitutional violations, one of which was broken down and presented as two separate claims in Baker's federal petition of 6/25/99. The claim in the PCRA petition that Baker separated into two claims in his federal petition involves

the application of Pennsylvania's "significant history of felony convictions" aggravating circumstance in Baker's sentencing.

Baker presented two additional "claims" in his PCRA petition of 1/15/97 that did not raise substantive constitutional violations and, therefore, were not presented in his federal petition: a claim asserting that the relaxed waiver rule should be applied to the petition of 1/15/97, and a request for an evidentiary hearing.

the claims in his petition of 1/15/97, I will return to the procedural history of that petition. Baker filed the PCRA petition on January 15, 1997. The petition was assigned to Judge Sabo. Sometime prior to March 31, 1997, Baker's counsel, Billy Nolas, submitted to Judge Sabo a proposed order to dismiss the petition without prejudice "due to on-going litigation in federal court." According to Nolas, he submitted the order because Judge Sabo had dismissed the PCRA petition of another client of Nolas, Otis Peterkin, on this ground. Because the procedural posture of Baker's PCRA petition was identical to that of Peterkin, Nolas concluded that Judge Sabo would dismiss Baker's petition on this same ground, and submitted the proposed order in hopes of expediting Judge Sabo's review.

On March 31, 1997, Judge Sabo issued an order dismissing Baker's petition of 1/15/97 "as premature due to on-going litigation in federal court" and informing Baker that he had 30 days in which to appeal. This order was similar to but was not precisely the proposed order submitted by Nolas and did not specify whether the dismissal was with or without prejudice.

On April 9, 1997, Baker filed a motion for rehearing of the petition of 1/15/97 based on newly discovered evidence which Baker contended disclosed a *Batson* claim.

On April 25, 1997, Baker timely appealed Judge Sabo's March 31, 1997 dismissal of the PCRA petition of 1/15/97 to the Pennsylvania Supreme Court, raising all twenty-one constitutional violation claims that were presented in the petition, plus the *Batson* claim that Baker raised in the April 9, 1997 motion for rehearing.

On May 7, 1997, triggered by Baker's appeal, Judge Sabo issued a memorandum opinion in support of his March 31, 1997 dismissal of Baker's PCRA petition stating that the "petition was initially dismissed at

the request of defense counsel" and denying the motion for a hearing on the *Batson* claim. Attached to the opinion was a copy of the proposed order to dismiss Baker's petition "without prejudice due to on-going litigation in federal court" that Baker (Baker's counsel) submitted to Judge Sabo.

On May 14, 1997, Baker filed a petition for reconsideration of Judge Sabo's May 7, 1997 opinion challenging Judge Sabo's statement that Baker had requested dismissal of the petition of 1/15/97. Judge Sabo denied the motion for reconsideration.

On May 4, 1999, the Pennsylvania Supreme Court affirmed Judge Sabo's March 31, 1997 dismissal. In its opinion, the court concluded that it was not error to grant Baker's request to dismiss the petition:

> "The rules of criminal procedure allow a party to 'withdraw a petition for post-conviction collateral relief at any time.' Pa.R.Crim.P. 1505. We cannot, therefore, rule that it was error to grant [Baker's] request for a dismissal. Nor can we rule that it was error to deny [Baker] a rehearing on his own request."

*Commonwealth v. Baker*, 556 Pa. 427, 728 A.2d 952, 953 (Pa.1999).

 Notwithstanding Judge Sabo's assertion in his May 7, 1997 opinion that Baker's petition was dismissed at the request of defense counsel, Baker has satisfied the exhaustion requirement with respect to the claims raised in his PCRA petition of 1/15/97: he "fairly presented" the claims to both the PCRA court and the Pennsylvania Supreme Court, the highest state court in which he was entitled to review. Baker's approximately 150 page petition of 1/15/97 substantiates Baker's contention that he "fairly presented" each federal claim in the petition to the PCRA court. The petition sets forth the factual

basis of each claim, specifically identifies the federal constitutional provision or guarantee which Baker claimed had been violated, or cites federal cases addressing the alleged constitutional violation, or both. *See McCandless*, 172 F.3d at 261 (a claim may be "fairly presented" through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation").

After the PCRA court dismissed the petition as "premature due to on-going litigation in federal court," Baker timely appealed the dismissal, and later filed an appellate brief in which he "fairly presented" each claim in the petition of 1/15/97 to the Pennsylvania Supreme Court. Like the petition itself, Baker's only slightly shorter appellate brief provides the factual and legal basis for each federal constitutional violation claim contained in the petition.[30]

■ Nevertheless, the Commonwealth argues that Baker did not "fairly present" the claims in the petition of 1/15/97 because he requested that the petition be dismissed, thereby depriving the PCRA court, and on appeal, the Pennsylvania Su-preme Court, of a "fair" opportunity to consider the claims on their merits. The Commonwealth's argument, however, presumes that Baker, in fact, requested that the petition be dismissed. This is not supported by the record. The March 31, 1997 dismissal order states only that the petition was dismissed "as premature due to on-going litigation in federal court." It makes no mention of the request to dismiss by defense counsel. Although Judge Sabo's May 7, 1997 opinion asserts that the petition was dismissed at the request of defense counsel, this assertion alone is not sufficient to establish it as fact.[31] As Baker points out, Pennsylvania's rules of criminal procedure require that "[a]ll motions, challenges, and applications or requests for an order or relief shall be made by written motion, except as otherwise provided in these rules, or as permitted by the court, or when made in open court during a trial or hearing." Pa.R.Crim.P. 574(A). Here, the record contains no motion to dismiss by Baker or even letter requesting dismissal. Nor did Judge Sabo hold a hearing in which this request could have been made on the record. Under Pennsylvania law, a fact cannot become of record solely by virtue of its inclusion in the trial court opinion. *Hatalowich v. Bednarski*, 315 Pa.Super. 303, 461 A.2d 1292, 1294 (Pa.Super.Ct.1983) (citing *McCaffrey v. Schwartz*, 285 Pa. 561, 132 A. 810 (1926)).

---

**30.** Baker's appellate brief also contained the *Batson* claim that was not presented in the petition of 1/15/97. I will address the status of this claim later.

**31.** The Commonwealth argues that the findings of the state courts regarding Baker's requested dismissal are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Section 2254(e)(1) provides: "In a proceeding instituted by an application for a writ of habeas corpus by a person in state custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Section 2254(e)(1)'s presumption of correctness applies to factual issues that are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators....'" *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir.1996) (quoting *Townsend v. Sain*, 372 U.S. 293, 309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). Moreover, it does not apply to facts that are not fairly supported by the record. *Id.*

As for the proposed order to dismiss Baker's petition of 1/15/97 "without prejudice due to on-going litigation in federal court," a copy of which Judge Sabo attached to his May 7, 1997 opinion, Baker's counsel does not deny submitting it. He does, however, strongly dispute why he submitted it. Yet even if the proposed order itself were sufficient to establish that Baker requested dismissal of the petition, the order must be part of the record in order to support this finding of fact. Pennsylvania Rule of Appellate Procedure 1921 provides that "the original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases." Pa. R.App.P.1921. I see no indication in the record before me that Baker (Baker's counsel) filed the proposed order in the PCRA court. The mere attachment of the proposed order to the PCRA court's May 7, 1997 opinion alone does not make it "of record." *See Hatalowich,* 461 A.2d at 1294 (affidavit attached to trial court opinion cannot become part of the record unless the affidavit was separately filed in the appropriate court). Even the Pennsylvania Supreme Court acknowledged the lack of clarity in the record regarding whether Baker, in fact, requested dismissal. In its May 4, 1999 opinion, the court stated: "[Baker] then *apparently* moved to have the PCRA petition dismissed because the federal habeas corpus proceedings were

pending." *Baker,* 728 A.2d at 953 (emphasis added).

The exhaustion requirement mandates only that the state courts be afforded a full and fair opportunity to address federal claims. Baker afforded the state courts this opportunity. He fully briefed the factual and legal bases of the claims contained in his petition of 1/15/97 to the PCRA court and to the Pennsylvania Supreme Court on appeal. Thus, he "fairly presented" his claims to the state courts for their consideration. Given that Baker's "request to dismiss" is not fairly supported by the record, I reject the Commonwealth's argument that Baker somehow failed to properly exhaust the claims because of the purported "request to dismiss." As long as the claims were "fairly presented" to the state courts, the courts' decision not to reach the merits of the claims does not defeat a finding that the claims were properly exhausted.[32] *See Castille,* 489 U.S. at 350, 109 S.Ct. 1056 (" 'once a claim has been *fairly presented* to the state courts, the exhaustion requirement is satisfied.' "). Accordingly, because Baker "fairly presented" the claims raised in his PCRA petition of 1/15/97 to each level of state court, including the highest court to which he was entitled to review, I conclude that Baker has met his burden to show that he properly exhausted these claims in the 1997 PCRA proceedings.[33]

The remaining question is whether Baker exhausted the three claims in his feder-

**32.** The Commonwealth also argues that Baker did not properly exhaust the claims in his petition of 1/15/97 because the petition was not timely filed under Pennsylvania law. Even assuming for the sake of argument that the petition was untimely, this fact alone does not preclude a finding that the claims in the petition were exhausted. *See Bond v. Fulcomer,* 864 F.2d 306, 309 (3d Cir.1989) ("fairly presented" claim in an untimely petition

satisfies exhaustion requirement). Whether or not the petition was untimely goes to the issue of procedural default, not exhaustion.

**33.** However, the question of whether Baker procedurally defaulted the claims in his petition of 1/15/97 due to the "request to dismiss" is a separate question, and one that I will address infra.

al petition of 6/25/99 that are not contained in his PCRA petition of 1/15/97. These three claims are: (1) the arbitrary "proportionality review" performed by the Pennsylvania Supreme Court violated Baker's right to due process and denied him meaningful appellate review in violation of the 8 th and 14 th Amendments (Claim VI); (2) the Commonwealth discriminated against African–American venirepersons in its exercise of peremptory jury challenges in violation of the 6 th, 8 th, and 14 th Amendments (Claim XII); and (3) Petitioner's death sentence was a product of improper racial discrimination and violates the United States Constitution (Claim XIII). I will consider each claim in turn.

### (1) Claim VI—Proportionality Review

■■■ At the time that Baker was sentenced to death, the Pennsylvania Supreme Court was required to conduct a review to determine whether Baker's death sentence was "excessive or disproportionate to the penalty imposed in similar cases." See 42 Pa. Cons.Stat. Ann. § 9711(h)(3)(iii). On direct appeal, Baker argued that his sentence was "excessive and disproportionate" under § 9711(h)(3)(iii). In its June 17, 1992 opinion affirming Baker's judgment of sentence, the Pennsylvania Supreme Court conducted its statutorily mandated "proportionality review" and ultimately rejected Baker's argument that his sentence was arbitrary because it was disproportionate or excessive. See *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663, 677–78 (Pa. 1992).

The Commonwealth contends that Baker never raised the claim that the Pennsylvania Supreme Court's proportionality review violated his *federal* constitutional rights in state court and, therefore, did not properly exhaust this claim. I disagree.

In its June 17, 1992 opinion, the Pennsylvania Supreme Court began its analysis of whether or not Baker's sentence was unconstitutional by stating that Baker "contends that the sentence is constitutionally defective on three grounds." According to the court, one of the grounds was that Baker "was chosen for death arbitrarily since his two accomplices were not so sentenced." *Id.* at 677. After reviewing the pertinent data, the court concluded that Baker's sentence was not disproportionate and affirmed the judgment of sentence. *See id.* Thus, according to its own statements, the Pennsylvania Supreme Court considered whether Baker's death sentence was unconstitutional because it was disproportionate. Nowhere did the court state that its constitutional analysis was limited to the Pennsylvania Constitution. As the court in *Pursell v. Horn*, 187 F.Supp.2d 260 (W.D.Pa.2002), recently noted, the Pennsylvania Supreme Court has indicated that it "implicitly resolves all constitutional issues [including federal constitutional issues] concerning the application of proportionality review when it performs that review on direct appeal." *Id.* at 289 (citing *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 708 (1998)).

The purpose of the exhaustion and fair presentation requirements is to provide state courts with the opportunity to consider federal claims. *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728. Here, the Pennsylvania Supreme Court not only had the opportunity to address Baker's federal constitutional claim, it implicitly decided it. *See Pursell*, 187 F.Supp.2d at 289. Therefore, I find that Baker's federal constitutional claim concerning the Pennsylvania Supreme Court's proportionality review was fairly presented to the highest reviewing court and thus was properly exhausted.[34]

---

**34.** While I conclude that Baker has satisfied the exhaustion requirement with respect to

(2) Claim XII—Improper Use of Peremptory Strikes under *Batson*

While this claim was not included in the petition of 1/15/97 itself, Baker attempted to add the claim to the petition, although not until after the PCRA court had dismissed the petition on March 31, 1997. On April 9, 1997, Baker filed a motion for rehearing of the PCRA court's dismissal of the petition in which he argued that newly discovered evidence regarding the use of peremptory strikes by the Philadelphia District Attorney's Office gave rise to a *Batson* claim. The PCRA court denied Baker's motion for rehearing. Baker then raised the *Batson* claim on appeal to the Pennsylvania Supreme Court.

Whether or not Claim XII was exhausted in the 1997 PCRA proceedings raises a possible different question of exhaustion, one which neither party has addressed. Therefore, I will allow the Commonwealth to reassert an objection to Claim XII on exhaustion and procedural default grounds consistent with this memorandum in its answer to Baker's federal petition of 6/25/99. Ultimately, Baker bears the burden to prove exhaustion. *See Lines,* 208 F.3d at 159.

(3) Claim XIII—Death Sentence is a Result of Racial Discrimination

Baker did not raise this issue as a separate claim in his petition of 1/15/97 or on appeal to the Pennsylvania Supreme Court. He contends, however, that it was exhausted in the 1997 PCRA proceedings. Claim XIII appears to be based, at least in

part, on Baker's contention in Claim XII that the prosecutor used peremptory strikes in a racially discriminatory manner. As was the case with respect to Claim XII, the Commonwealth did not address whether or not Baker exhausted Claim XIII in the 1997 PCRA proceedings. Therefore, I will also allow the Commonwealth to assert an exhaustion or procedural default objection to Claim XIII in its answer to Baker's federal petition of 6/25/99.

**VIII. Procedural Default**

Beyond the exhaustion requirement, Baker faces the procedural default bar to federal habeas review. The Commonwealth contends that Baker procedurally defaulted the claims in the PCRA petition of 1/15/97, and thus they are unreviewable in federal court.[35]

 Under the doctrine of procedural default, when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. *See also Caswell v. Ryan,* 953 F.2d 853, 857 (3d Cir.1992).

 A state rule provides an independent and adequate ground for precluding federal habeas review if: (1) the state

---

this claim, he faces a much higher hurdle in prevailing on the merits. *See e.g., Laird v. Horn,* 159 F.Supp.2d 58, 124–25 (E.D.Pa. 2001) (rejecting petitioner's claim that Pennsylvania Supreme Court's proportionality review was unconstitutional on the ground that proportionality review was not constitutionally mandated and petitioner had not shown that the state court acted in bad faith).

**35.** The Commonwealth does not challenge that Baker properly exhausted and did not procedurally default the claims raised in his direct appeal and his PCHA petition of 4/10/87.

procedural rule speaks in unmistakable terms; (2) all state courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions. *Doctor*, 96 F.3d at 683–84. In order to bar federal review, the state procedural bar must have been "firmly established and regularly followed" at the time of the alleged default. *Ford v. Georgia*, 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Jermyn v. Horn*, 266 F.3d 257, 278 (3d Cir.2001). The purpose behind the "adequacy" requirement is notice. A petitioner must have "notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court." *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir.1999).

The claims in Baker's petition of 1/15/97 are procedurally defaulted if the state courts' disposition of the petition was based on an independent and adequate state procedural rule. If so, federal habeas review is barred unless Baker demonstrates cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

A review of the relevant procedural history might be helpful. On March 31, 1997, the PCRA court (Judge Sabo) dismissed Baker's petition of 1/15/97 without reaching its merits on the ground that it was "premature due to on-going litigation in federal court." On May 7, 1997, Judge Sabo issued an opinion in support of its March 31, 1997 dismissal asserting for the first time that the petition was dismissed at the request of defense counsel. Baker's counsel vociferously challenges the representation that he ever requested the dismissal of Baker's petition. Attached to Judge Sabo's opinion was a copy of the proposed order to dismiss the petition "without prejudice due to on-going federal litigation" that Baker's counsel submitted to Judge Sabo, unaccompanied by any motion to dismiss or any less formal request for dismissal.

On appeal, the Pennsylvania Supreme Court ruled on May 4, 1999 that (1) the PCRA court did not err in granting Baker's request for a dismissal, and (2) it could not reach the merits of the claims presented in the petition, which Baker briefed on appeal, because Baker had waived them in the lower court when he requested dismissal of the petition. The court articulated this position as follows:

> In January of 1997, Appellant [Baker] filed a PCRA petition in the court of common pleas. Appellant then *apparently* moved to have the PCRA petition dismissed because the federal habeas corpus proceedings were pending. On March 31, 1997, Judge Sabo granted this motion to dismiss ...
>
> The rules of criminal procedure allow a party to "withdraw a petition for post-conviction collateral relief at any time." Pa.R.Crim.P. 1505. We cannot, therefore, rule that it was error to grant Appellant's request for a dismissal. Nor can we rule that it was error to deny Appellant a rehearing on his own request. Appellant's brief also lists 23 other alleged errors.[36] Due to Appellant's requested dismissal, none of these issues were litigated before the common pleas court and thus, no record has been developed for this Court to review. It is a general rule that, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Therefore, we do not reach the merits of these issues.

*Baker*, 728 A.2d at 953 (emphasis added).

To provide an independent and adequate basis for denying relief to Baker, the state

---

**36.** The twenty-three "other alleged errors" that Baker raised on appeal are the twenty-three claims presented in the petition of 1/15/97.

procedural rule(s) relied upon by the state courts in dismissing Baker's petition of 1/15/97: (1) must speak in unmistakable terms; (2) all state courts must have refused to consider the claims in Baker's petition of 1/15/97 on their merits, and (3) the rules must have been firmly established and consistently applied at the time of Baker's default. *Doctor,* 96 F.3d at 683–84. Neither the PCRA court nor the Pennsylvania Supreme Court reached the merits of Baker's petition of 1/15/97. Thus, the second requirement is satisfied in Baker's case. The first requirement of "unmistakable terms" and the third requirement of "firmly established and consistently applied" are not.

## A. "Unmistakable Terms"

 The requirement that a rule speak in "unmistakable terms" in order to constitute an "independent and adequate" state ground precluding federal habeas review is based on the decision of the United States Supreme Court in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Sykes,* the Supreme Court considered whether a Florida "contemporaneous objection" rule provided an independent and adequate basis for barring federal habeas review of a claim challenging the voluntariness of statements that Sykes made to the police which were admitted at trial. Sykes did not move to suppress statements he made to the police before or during trial, nor did he challenge their admission on direct appeal. After his conviction was affirmed on direct appeal, Sykes filed post-conviction motions where for the first time he argued that his statements to the police were involuntary. The Florida courts denied Sykes post-conviction relief.

Sykes then filed a federal habeas petition in which he challenged the voluntariness of his statements. In the federal proceedings, the state argued that Sykes had waived the claim under Florida's "contemporaneous objection rule." *See id.* at 74, 97 S.Ct. 2497. This rule requires a defendant to file a motion to suppress a confession "prior to trial unless opportunity therefore did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion or an appropriate objection at the trial." *Id.* (quoting Florida Rule Crim.Proc.3.190(i)). Sykes countered that the Florida rule could not bar federal review of his claim on the ground that he failed to object at trial in part because the rule placed the burden on the trial court to raise sua sponte the admissibility of a defendant's statements. The Supreme Court rejected this argument, finding that the Florida procedural rule "in unmistakable terms and with specified exceptions requires that the motion to suppress be raised before trial." *Id.* at 85, 97 S.Ct. 2497. Therefore, the court held that Sykes' failure to object at trial "amounted to an independent and adequate state procedural ground" barring habeas review. *Id.* at 86, 97 S.Ct. 2497.

In *Bond v. Fulcomer,* 864 F.2d 306 (3d Cir.1989), the Third Circuit considered whether Pennsylvania's rules governing the time for filing an appeal satisfied *Sykes'* requirement that they speak in "unmistakable terms" and, therefore, met the first prong of the independent and adequate state rule standard. Bond filed his direct appeal more than a year after judgment of sentence was entered. According to the Third Circuit, Pennsylvania's procedural rules clearly established that Bonds' appeal was untimely: "[T]here is no ambiguity in either Pa.R.App.P. 903(a) establishing the 30–day appeal period or in 42 Pa.Con.Stat.Ann. § 5504 which generally disallows extensions of time for the filing of appeals." *Id.* at 312. Thus, the court held that the requirement that

the state procedural rules speak in "unmistakable terms" was satisfied in Bond's case. *See id.*

In *Reynolds v. Ellingsworth,* 843 F.2d 712 (3d Cir.1988), the Third Circuit held that the Delaware rule relied upon by the state courts in finding that Reynolds had waived claims which he first raised in a post-conviction petition did not speak in "unmistakable terms" because the rule did not cover the situation presented in Reynolds' case. The Delaware rule at issue was a contemporaneous objection rule that requires a defendant to move for the suppression of evidence before or at trial. According to the Third Circuit, Delaware's contemporaneous objection rule did not speak "in unmistakable terms" in Reynolds' case to bar review of his claims because the claims did not challenge the admission of evidence at trial but rather, in the context of a violation of due process and ineffective assistance of counsel, challenged remarks made by the prosecutor during his opening statement [37]: "Before us now [ ] is not a violation of [Delaware's contemporaneous objection rule relating to the suppression of evidence], but a very different circumstance: prosecutorial overreaching . . ." *Id.* at 719–20. Although not expressly articulated, *Reynolds* ultimately stands for the proposition that not only must a state rule speak in "unmistakable terms," the rule must not be unreasonably applied to the facts and circumstances in a given case.

Adopting the lessons of *Sykes, Bond,* and *Reynolds,* I conclude that although the state courts' denial of relief to Baker was purportedly based on state procedural rules, the rules did not govern the facts or situation in this case. With respect to the PCRA court, the basis of its dismissal is unclear from the record. In its March 31, 1997 dismissal order, the PCRA court (Judge Sabo) stated that the petition was "dismissed as premature due to on-going litigation in federal court." No state rule or precedential case was cited in support of this ruling, and no mention was made of Baker's request to dismiss the petition. A month later, on May 7, 1997, the PCRA court issued an opinion in support of its dismissal where it stated that Baker's petition was dismissed "at the request of defense counsel."

The Pennsylvania Supreme Court, however, did expressly articulate the basis of its denial of relief to Baker. In the May 4, 1999 memorandum, the Pennsylvania Supreme Court first held that it was not error for the PCRA court to grant Baker's request to dismiss the petition of 1/15/97, citing Pennsylvania Rule of Criminal Procedure 1505. Rule 1505 provides in relevant part: "The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time." Pa.R.Crim.P. 1505(a). Next, the court ruled that under Pennsylvania Rule of Appellate Procedure 302, it could not consider the merits of claims raised in Baker's petition of 1/15/97 because they were not litigated in the lower court. Rule 302 states: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.App.P. 302.

---

**37.** In finding that Reynolds had waived these claims, both the Delaware Superior Court and the Delaware Supreme Court expressly relied on the Delaware Supreme Court's prior decision in *Conyers v. State,* 422 A.2d 345 (Del.1980). *See Reynolds,* 843 F.2d at 716. In *Conyers,* the court ruled that where no contemporaneous objection is made to the admissibility of evidence at trial as required under Delaware's contemporaneous objection rule, a defendant may not challenge the admission of the evidence for the first time in a post-conviction proceeding absent a demonstration of cause and prejudice. *See Conyers,* 422 A.2d at 346.

Although the terms of Rule 1505 and Rule 302 are "unmistakable," they were unreasonably applied to bar merits review of the claims in Baker's petition of 1/15/97. Rule 1505 unambiguously establishes that a PCRA petition may be withdrawn by a petitioner. Common sense dictates, however, that for Rule 1505 to apply to Baker's petition of 1/15/97, the record must establish that Baker in fact requested leave to withdraw his petition. This was required in both *Sykes* and *Bond.* The record established in *Sykes* that the petitioner had not objected to the admission of evidence before trial as the Florida rule required. *See Sykes,* 433 U.S. at 85, 97 S.Ct. 2497. In *Bond,* the record reflected that under Pennsylvania procedural rules the defendant's appeal was untimely. *See Bond,* 864 F.2d at 312.

In Baker's case, the record fails to support the fact that he requested withdrawal of his petition. The PCRA court's March 31, 1997 dismissal order makes no mention that the dismissal was at the request of Baker. The record contains no motion to withdraw or dismiss, letter requesting dismissal, nor transcript of a hearing in which Baker made an oral request to dismiss the petition. While Rule 1505 sets forth that a court can grant a request to withdraw a PCRA petition, Pennsylvania Rule of Criminal Procedure 574(A) requires that such a request "be made by written motion, except as otherwise provided in these rules, or as permitted by the court, or when made in open court." Pa.R.Crim.P. 574(A). Nothing in the record, other than the opinion of Judge Sabo issued months after the dismissal order was entered, suggests that a request to withdraw was ever made.

▮ Furthermore, neither Judge Sabo's assertion in his May 7, 1997 opinion that the petition was dismissed at the request of defense counsel, nor the attachment of the proposed order to the May 7, 1997 opinion establishes that Baker in fact "requested dismissal." Under Pennsylvania law, a fact does not become of record solely by virtue of a trial court's assertion of the "fact" in its opinion; it must be independently supported by the record. *See Hatalowich,* 461 A.2d at 1294.[38] A document cannot become of record solely by virtue of its inclusion in the trial court's opinion. *See id.* Unless the proposed order was filed in the appropriate court, it is not part of the record. *See* Pa.R.App.P. 1921.

Although the Pennsylvania Supreme Court ruled that the PCRA court did not err in granting Baker's request to dismiss the petition, the court itself noted that this "fact" was not clear from the record. It stated in its opinion that Baker "*apparently* moved to have the PCRA petition dismissed." [39] *Baker,* 728 A.2d at 953 (emphasis added). Thus, because the record contains no written document nor oral request establishing that Baker "moved to have the PCRA petition dismissed," Pennsylvania Rule of Criminal Procedure 1505 was inapplicable in these facts and circumstances and, therefore, insufficient to preclude the Pennsylvania Supreme Court

---

**38.** As was noted earlier, the record is devoid of any indication as to how or why the proposed order was in Judge Sabo's hands. A submission of a proposed order is insufficient foundation for the conclusion that counsel requested action consistent with the order. Proposed orders are submitted to a court for many reasons, including that a judge asked that counsel submit such a proposed order.

**39.** Even if the Pennsylvania Supreme Court had stated unequivocally that Baker requested dismissal of the petition, only "basic, primary or historical facts" that are fairly supported in the record are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *Berryman,* 100 F.3d at 1094.

from considering Baker's petition on its merits.

The same reasoning applies with respect to the Pennsylvania Supreme Court's reliance on Pennsylvania Rule of Appellate Procedure 302, which the court applied subsequent to its finding that, under Rule 1505, the PCRA court did not err in dismissing Baker's petition at his own request. According to Rule 302, issues not raised in the lower court are waived and cannot be raised on appeal. Pa.R.App.P. 302. While the rule may speak in unmistakable terms, it did not serve as a bar to review of Baker's claims. Applied to Baker's case, Rule 302 would have prevented the Pennsylvania Supreme Court from considering any claim that Baker raised in his appeal that he failed to raise in the PCRA court. It is not disputed that Baker's petition of 1/15/97 was, at one point in time, pending before the PCRA court, and that the petition raised over twenty substantive claims for relief. The claims, therefore, were raised in the lower court. The Pennsylvania Supreme Court's application of Rule 302 is inexorably linked to the misapplication of Rule 1505. Baker's claims were not waived under Rule 1505; therefore, Rule 302 was also unreasonably applied to the facts and the circumstances in Baker's case.

## B. "Firmly Established and Regularly Followed"

The procedural rules applied by the Pennsylvania Supreme Court to bar review of Baker's claims on their merits must also have been "firmly established and regularly followed" at the time of Baker's default in order to preclude federal habeas review. *Doctor*, 96 F.3d at 683–84.

With respect to Pennsylvania Rule of Criminal Procedure 1505, allowing a court to grant leave to withdraw a PCRA petition, it is far from clear that the Pennsylvania courts have treated requests to withdraw a PCRA petition consistently. As Baker notes, in at least two capital cases, the Pennsylvania Supreme Court required that a prisoner who desired to withdraw his PCRA petition and waive his right to seek further relief under the PCRA make a knowingly and intelligent waiver in open court. *See Commonwealth v. Bronshtein*, 556 Pa. 545, 729 A.2d 1102, 1103–07 (1999) (upholding PCRA court's finding after conducting a lengthy colloquy that petitioner's waiver of his right to seek post-conviction relief was knowing and intelligent); *Commonwealth v. Fahy*, 549 Pa. 159, 700 A.2d 1256, 1258 (1997) (petitioner's waiver of all post-conviction proceedings is valid). The Pennsylvania courts have recognized that the withdrawal of a PCRA petition by a petitioner sentenced to death is of such a magnitude that it requires a court to take extraordinary steps to ensure that the petitioner understands the effect that the withdrawal will have on his or her ability to seek any further relief in state court.

Baker's "request to dismiss" was made, if at all, in March 1997. Bronshtein requested to withdraw his PCRA petition in January 1998; Fahy's request came in December 1995. *See Bronshtein*, 729 A.2d at 1103; *Fahy*, 700 A.2d at 1258. Thus, the Pennsylvania courts conducted waiver colloquies both before and after Baker's alleged request. No waiver colloquy was conducted by the PCRA court in Baker's case, nor did the PCRA court take any other step to ensure that Baker was aware of the request to withdrawal.[40] State

---

**40.** Whether no colloquy was held in Baker's case because, according to the PCRA court, the request came from defense counsel and did not represent an attempt by Baker to forego all further collateral review is, like the request to dismiss itself, unclear from the

courts need not apply a state procedural rule in the same manner in every case in order for the rule to be "regularly and consistently applied;" however, the rule must be applied "evenhandedly." *See Doctor*, 96 F.3d at 684. Given the caution with which the Pennsylvania courts have responded to similar requests to withdraw a PCRA petition in past capital cases, as compared to the manner in which Baker's request was handled, it is difficult to conclude that the state courts have treated such requests, and particularly Baker's request, evenhandedly.

 Furthermore, with respect to the Pennsylvania Supreme Court's finding that Baker waived the issues in the lower court under Pennsylvania Rule of Appellate Procedure 302, the Third Circuit has held in more than one capital case, and with respect to more than one Pennsylvania procedural rule, that as long as the possibility existed at the time of a prisoner's default that the Pennsylvania courts might apply the relaxed waiver rule to the prisoner's PCRA petition, Pennsylvania law did not clearly foreclose substantive review of claims in the petition, even if the claims were otherwise procedurally defaulted. That the state courts might apply the relaxed waiver rule to a PCRA petition remained a possibility until the Pennsylvania Supreme Court expressly renounced the practice on November 23, 1998 in *Commonwealth v. Albrecht*, 720 A.2d at 700. *See Fahy v. Horn*, 240 F.3d at 245.

Thus, in *Banks v. Horn*, 126 F.3d 206 (3d Cir.1997) (*Banks I*), decided before *Albrecht*, the Third Circuit concluded that the PCRA's rule regarding the waiver of claims not raised in a prisoner's first PCRA petition, 42 Pa.Cons.Stat.Ann. § 9545(b), was not consistently applied af-

ter finding several cases in which the Pennsylvania Supreme Court applied the relaxed waiver rule to reach the merits of claims otherwise waived under the PCRA. *See id.* at 211–214.

The court reaffirmed this holding in *Jermyn v. Horn* where it again ruled that the PCRA's waiver rule governing claims presented in a second or successive petition was not consistently applied by Pennsylvania courts at the time of Jermyn's default in 1993. *See Jermyn*, 266 F.3d at 278–79 (Pennsylvania Supreme Court's refusal to consider Jermyn's claims in a successive petition on the ground that they were waived under § 9544(b) did not provide an independent and adequate state ground for denying relief on the merits).

In *Fahy v. Horn*, the Third Circuit similarly concluded that it was not clearly established that Pennsylvania courts would refuse to consider a PCRA petition in a capital case that was otherwise untimely under § 9545(b)'s one-year limitation period until the Pennsylvania Supreme Court's announcement in *Albrecht* that it would no longer apply the relaxed waiver rule to PCRA petitions. *Fahy*, 240 F.3d at 245. ("The law at the time of Fahy's petition was inhibitively opaque. Fahy filed his fourth PCRA petition in November, 1997, months before the Pennsylvania Supreme Court announced that it would no longer observe the relaxed waiver rule"). *See also Banks IV*, 271 F.3d at 534–35 (same).

Baker's purported request that the PCRA court dismiss the petition of 1/15/97 occurred, at the very latest, on March 31, 1997. At that time, the Pennsylvania Supreme Court had not yet made its announcement in *Albrecht* that it would no longer apply the relaxed waiver rule to

---

record. Yet regardless of who the "request" to dismiss came from, Baker or Baker's counsel, the resulting dismissal had the same effect

on Baker as if he had requested to waive all further post-conviction proceedings—he was denied all further review by the state courts.

PCRA petitions in capital cases.[41] Therefore, according to *Banks I, Fahy,* and *Jermyn,* because it was possible that the Pennsylvania Supreme Court would apply the relaxed waiver rule to Baker's PCRA petition in March 1997, it was not "firmly established" at the time of Baker's "default" that the court would refuse to reach the merits of his claims even if he had waived them in the lower court under Pennsylvania Rule of Appellate Procedure 302.

Although none of the Third Circuit cases specifically involved waiver under Pennsylvania Rule of Appellate Procedure 302, as in Baker's case, there is no reason why the Third Circuit's conclusion that Pennsylvania procedural bar rules were not consistently applied while Pennsylvania courts continued to apply the relaxed waiver rule to PCRA petitions does not govern Baker's case as well. Indeed, as Judge Reed of this district observed in *Bronshtein v. Horn,* 2001 WL 767593 (E.D.Pa. July 5, 2001), "[U]p until November 1998 [when *Albrecht* was issued], the Pennsylvania Supreme Court regularly excused violations of Rule 302 in capital cases on both direct and PCRA appeals." *Id.* at n. 19. *See e.g., Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38, 48 (1994) (considering claim in a PCRA petition on its merits even though petitioner failed to object at trial and thus waived the claim under Rule 302). According to Judge Reed, in capital cases, a petitioner's failure to comply with Rule 302

in PCRA proceedings prior to November 1998 would not bar a federal habeas court from considering claims otherwise waived under the rule. *See Bronshtein,* 2001 WL 767593, at n. 19. *See also Laird v. Horn,* 159 F.Supp.2d 58, 81 (E.D.Pa.2001) (even though petitioner failed to raise a claim on direct appeal in a capital case, it was not procedurally defaulted under Pennsylvania's waiver rules because petitioner filed his PCRA petition "at a time when Pennsylvania applied a relaxed waiver rule in capital cases").[42]

Accordingly, because the Pennsylvania Supreme Court "[did] not apply the Pennsylvania procedural bar rules [including waiver rules] consistently in death penalty cases" at the time of Baker's default in March 1997, the Pennsylvania Supreme Court's refusal to reach the merits of Baker's claims is not based on a state procedural rule that was "firmly established and regularly followed" at the time of Baker's default. *Jermyn,* 266 F.3d at 279 (quoting *Banks I,* 126 F.3d at 213).

The Pennsylvania courts' refusal to consider Baker's petition of 1/15/97 on its merits was not based on an independent and adequate state procedural rule. Neither rule cited by the Pennsylvania Supreme Court (and implicitly relied on by the PCRA court) met the "unmistakable terms" and "consistently applied" criteria at the time of Baker's alleged default. The purpose of requiring that a state pro-

---

**41.** I discussed more fully the relationship between the relaxed waiver rule and Baker's petition of 1/15/97, supra, in relation to whether Baker was entitled to equitable tolling. Based on the Third Circuit's analysis in *Fahy v. Horn,* I concluded that it was not clear at the time that Baker filed the petition of 1/15/97 whether the state courts would apply the relaxed waiver rule to reach the merits of the petition despite its potential untimeliness. *See supra* VI.

**42.** The Commonwealth also contends that the claims in Baker's petition are procedurally defaulted because the petition was untimely under § 9545(b) of the PCRA. Because the state courts did not rely on this ground in denying Baker relief, it does not bar federal review. *See Smith v. Freeman,* 892 F.2d 331, 337 (3d Cir.1989) ("[W]e are not bound to enforce a state procedural rule when the state itself has not done so, even if the procedural rule is theoretically applicable to our facts").

cedural bar speak in "unmistakable terms" and that it be "firmly established and consistently applied" is to ensure that a petitioner has "notice that he was about to do irreparable procedural damage to his case" at the time of the default. *Bronshtein,* 2001 WL 767593, at \*6. Given the uncertainty in the record regarding whether Baker in fact requested that his petition of 1/15/97 be dismissed, as well as the uncertainty in Pennsylvania law regarding whether the Pennsylvania Supreme Court would excuse Baker's "default" and reach the merits of his claims, Baker had no such notice.

Because the state courts' refusal to consider the claims in Baker's petition of 1/15/97 was not based on an independent and adequate state rule, the claims raised in the petition are not procedurally defaulted. Accordingly, I need not decide whether Baker has demonstrated cause or prejudice or a fundamental miscarriage of justice to excuse the alleged default. Baker has satisfied both the exhaustion and procedural default requirements with respect to the claims presented in his PCRA petition of 1/15/97. Therefore, I may consider these claims on their merits.

An appropriate order follows.

### *ORDER*

**AND NOW,** this day of May 2002, it is **ORDERED** that:

(1) The Commonwealth's motion to dismiss amended petition as untimely (Docket # 59, Part 1) is **DENIED;**

(2) The Commonwealth's motion to dismiss all claims in amended petition that are not reviewable under federal habeas law (Docket # 59, Part 2) is **DENIED.** The Commonwealth may reassert any objection to Claims XII and XIII as dis-

cussed in Section VII of this memorandum; and

(3) The Commonwealth shall file an answer to Baker's federal petition of 6/25/99 on or before July 1, 2002.[43]

---

**43.** I will entertain a request for immediate review of this order.